[No. 2682–3. Division Three. April 18, 1978.]

NELS B. NELSON, JR., *Appellant,* v. THE CITY OF TACOMA, *Respondent.*

*John R. Kramer* and *Hoff & Cross,* for appellant.

*William R. Hickman* and *Reed, McClure, Moceri & Thonn, P.S.,* for respondent.

ROE, J.—About a foot of snow fell on Tacoma 10 or 11 days prior to February 2, 1972, on which day the plaintiff, a pedestrian, was injured as he slipped on an icy street. He was not walking on the sidewalk, from which the snow had not been removed, nor was he walking in the street at a corner crosswalk. On that morning, he parked his car and walked across the street at mid–block to his office building on "C" Street between Delin Avenue and South 23rd. About 4 hours later, as he was walking the same route back

to his car, he slipped and fell. He seeks to hold the city liable. A summary judgment was granted in favor of the defendant.

The question is: What duty does the city owe to a pedestrian jaywalking in a street, assuming the sidewalks were covered with a foot of snow? Excluding the snow, there was no physical defect in the street or sidewalk.

Plaintiff contends that, because the snow had not been removed from the sidewalks, they were impassable; hence, he was forced to use the street. However, he was not walking in the street parallel to the sidewalk towards a crosswalk. There was no showing that the steep grade of the street was a contributing cause of the slip and fall. No city ordinance was pleaded or proved.

As to sidewalks, in 19 E. McQuillin, *Municipal Corporations* § 54.84 (3d ed. 1967), it is stated:

> Ordinarily, snow or ice upon a sidewalk is not to be classed with dangerous obstructions such as a municipality is required to remove. It is generally held that a natural and ordinary accumulation of snow and ice on sidewalks creates no municipal liability for injuries occasioned thereby, unless with respect thereto the municipality is in some manner negligent by disregarding its obligation to exercise ordinary care to keep its sidewalks in fit condition for usual travel. . . .
> . . . Municipal liability may arise if the snowy or icy sidewalk itself was defective, or the ice or snow, formed into ridges, drifts or hillocks, amounted to a dangerous obstruction to travel, the element of knowledge being shown.

The authorities indicate that the rules of liability vary from state to state. One of the first cases in Washington is *Calder v. Walla Walla*, 6 Wash. 377, 33 P. 1054 (1893), where the court states at page 378:

> The city is not liable for accidents occasioned by mere slipperiness caused by ice upon the walk. If the ice is not so rough and uneven, or so rounded up, or at such an incline as to make it an obstruction, and to cause it to be unsafe for travel with the exercise of due care, there is no liability. . . .

. . . [T]here was . . . testimony which showed that the accident was due to the slipperiness and smoothness caused by the ice upon the walk; and the defendant's first instruction, requesting the court to instruct the jury that "mere slipperiness of the sidewalk, occasioned by ice or snow, not being accumulated so as to cause an obstruction, is not ordinarily such a defect as will make the city liable for damages occasioned thereby," should have been given, . . .

(Citations omitted.)

■ As to streets the rule was set out in *Owens v. Seattle,* 49 Wn.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956), where an automobile had run into a large pool of water on the street:

A municipality is not an insurer against accident nor a guarantor of the safety of travelers. It is, however, obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using them in a proper manner and exercising due care for their own safety. . . . Where this duty is not fulfilled, the municipality is negligent . . .

(Citations omitted.) Mere slippery condition of a street due to natural causes is not actionable, at least where adequate warning is given. *Nelson v. Seattle,* 16 Wn.2d 592, 134 P.2d 89 (1943).

Plaintiff relies on *Hartley v. Tacoma School Dist. 10,* 56 Wn.2d 600, 354 P.2d 897 (1960). In that case negligence was held to be a jury question where the plaintiff slipped on a sidewalk which was icy, rough, and slippery. The case arose from a fall on a sidewalk, not a street, and there was evidence of more than mere slipperiness.

*Squillace v. Mountain Iron,* 223 Minn. 8, 12, 26 N.W.2d 197 (1946), is extensively argued by both parties in their briefs. In that case, the sidewalks were clogged and obstructed with snow to a height of 4 to 6 feet, making them impassable for pedestrians. This forced them to walk in the street. A bank of snow and ice also slanted 2 to 3 feet into the street. The plaintiff alighted from a school bus and walked in the street towards a crossing, parallel to the

sidewalk in the narrow passage between the bus and the slanted snow. While doing so, he slipped and fell under the wheels of the moving bus and was injured. The court held:

"Ordinarily, where there are sidewalks for pedestrian travel which are passable, a municipality is under a very slight duty, if any, to keep its *streets* in reasonably safe condition for pedestrian travel *except at crosswalks;* however, if the sidewalks are impassable so that pedestrians must walk in the street, a municipality is under a duty to keep its streets in the *vicinity* of the said sidewalks in reasonably safe condition for pedestrian travel; . . ."

. . .

If snow accumulates and results in ruts or similar conditions and the municipality has conclusive or actual notice thereof by virtue of their existence for a substantial length of time, then the obligation falls upon the municipality to remedy the situation or to respond in damages for its failure therein. It is true that we have excepted from this rule any obligation in connection with smooth glare ice and have held that *"mere slipperiness* of a sidewalk by either ice or snow is not a defect for which cities are liable." . . .

. . .

. . .[T]he duty of a city in respect to care of its sidewalks did 'not extend to the removal of ice which constitutes no other defect than slipperiness, there being no such accumulation of ice as to constitute an obstruction to travel, and no ridges or inequalities of such height, or lying at such inclination or angle as would be likely to trip passengers or cause them to fall.'" . . .

. . .

. . . The obligations placed upon a municipality in keeping its walks reasonably safe for pedestrian travel might not necessarily be applicable insofar as its streets are concerned. Here, however, because of the failure of the municipality to clear the sidewalk which plaintiff ordinarily would have used in going to his home, it became necessary for him to use the street *immediately adjoining it.* Under such circumstances, it would seem that defendant was obligated to exercise the same degree of care with reference to streets which pedestrians were forced to use in lieu of sidewalks as that which would be applicable ordinarily to sidewalks. . . . "It is true that

the use of the street *outside* of the sidewalk is primarily for traffic by teams and other vehicles, and the use of the sidewalk primarily for pedestrians, but pedestrians still have the right to use the street when the necessity arises. *It has never been held, to our knowledge, that they have not such right, or that the duty of a municipality to use reasonable care to keep the streets in a safe condition does not extend to making them reasonably safe for pedestrians who have occasion to be upon that portion of the street ordinarily traveled by vehicles."*

(Citations omitted. Some italics ours.) We agree that this is the extent of the duty of the city as to pedestrians walking in the streets.

■ There was no showing that the street was unsafe for vehicular travel in either *Squillace* or here. Plaintiff in this case made no showing that the corner crosswalk was unsafe for pedestrian travel. It is irrelevant, because plaintiff didn't slip on the crosswalk or claim he crossed mid–block because of the condition of the crosswalk. Nor did the plaintiff slip on the street parallel to the sidewalk approaching the crosswalk as was the case in *Squillace.*

Plaintiff was jaywalking. In effect he selected and created his own crosswalk mid–block, and insists the city should have made it safe for him. To permit him to recover on the basis that the city was negligent would require us to hold that the city must maintain the full block of a street safe for pedestrian cross travel when the sidewalk, or even a portion thereof, is blocked. This we will not do. At the maximum, plaintiff would have had to walk no more than one–half block to reach a crosswalk. There is no allegation or suggestion that the area in the street adjacent to the sidewalk was not reasonably safe. Plaintiff did not slip on such adjacent area, but rather in the street normally used only for vehicular traffic as he was crossing it. In reaching this disposition, we need not consider whether a foot of snow on the sidewalk, with no allegation that it was rough, uneven, or icy, rendered the sidewalk impassable, forcing pedestrians into the street.

The order granting summary judgment is affirmed.

MUNSON, C.J., and McINTURFF, J., concur.