[No. 2728–3.   Division Three.   October 18, 1979.]

CASIMIR R. PRYBYSZ, as Executor, Appellant, v. THE CITY OF SPOKANE, Respondent.

*Eugene I. Annis* and *Lukins, Annis, Bastine, McKay & Van Marter,* for appellant.

*Frank H. Johnson, Dan W. Keefe,* and *MacGillivray & Jones,* for respondent.

ROE, J.—The following facts were taken from an agreed narrative report of the proceedings. The attorneys are to be commended for their accomplishment in reducing what would have been an extensive verbatim report to a shortened narrative form, with conflicts in the evidence well stated. This saves not only considerable time and expense, but ensures that those facts which are pertinent to the disposition of the appeal are more plainly presented to capture notice.

Driver Mark Ratay and his wife Lois were killed December 8, 1974, when the automobile in which they were riding went through the guardrail on the Monroe Street Bridge in Spokane and fell some 120 feet to the riverbank below. The bridge was built between 1908 and 1912 and runs northerly–southerly across the Spokane River. The

two sections of the displaced guardrail weighed about 12,000 pounds.

Immediately preceding the accident, the Ratay vehicle made a right turn onto the southerly entrance to the bridge. Plaintiff's evidence showed that the road surface was broken and rough, that there was a slight hump 2 inches high and 6 feet wide, and that the road was icy and slippery; that the Ratays entered at approximately 25 miles per hour; the car went out of control, made a left turn, spun around making a 180–degree turn, and struck the west guardrail. The angle of approach was disputed. Evidence of the speed ranged from 5 to 50 miles per hour at the time of the impact. Forty feet of the guardrail was knocked off; the two right wheels of the Ratay vehicle dropped off, the left–hand side of the car slowly lifted up and the entire vehicle plummeted over carrying the Ratays to their deaths below.

There was evidence that the metal bars which tied the guardrail to the floor of the bridge had rusted away, that there was water, dirt and moss under portions of the dis-placed railing, and there was a physical separation in the parts between the guardrail and the roadway. There was also evidence that it was possible to knock off the guardrail at a 90–degree angle if a car were going 6.1 miles per hour, or if going 12.2 miles per hour, at a 32–degree angle.

Defendant's evidence was that the Ratays were speeding, the tires were squealing, the car was out of control, it careened into the southbound lane of travel, then went into the north lane, swerved around going 30 to 50 miles per hour, suddenly turned left, flipping or making a U–turn, and skidded or drove into the wall at a speed of between 10 to 45 miles per hour, and that the bridge was dry or slightly wet, not slippery or icy.

Experts for the defendant testified that they had checked the guardrail and saw no cracks where it was bonded to the bridge; there was no previous trouble with the guardrail; it had been hit many times before by cars and only chipped. No deficiencies were found by two graduate engineers in the 1972 and 1974 inspections of the bridge. They saw no

gaps between the rail and the deck, nor any moss or dirt on the sidewalk where the rail had been.

Mr. Ratay, the driver, had been drinking prior to the accident. Blood samples were taken revealing a blood alcohol content of .09 percent. A pathologist testified that this consumption of alcohol significantly affected one's ability to operate a car. The jury found for the defendant, answering an interrogatory that the City of Spokane was not negligent in its maintenance of the bridge.

Plaintiff complains that the court erred in giving its instruction No. 8,[1] which incorporated Washington Pattern Instruction 140.01.[2] Both parties objected to it. The plaintiff argued the instruction was too narrow; the defendant argued that it was too broad.

It cast upon the City a duty to keep its streets and bridges in a condition that is reasonably safe for usual and ordinary travel with reasonable regard for dangers that may be anticipated, which included a duty to maintain reasonable guardrails where the situation along the roadway is

---

[1]Instruction No. 8:

"A city has a duty to exercise ordinary care in the inspection, maintenance, and repair of its public streets and bridges to keep them in a condition that is reasonably safe for usual and ordinary travel, with reasonable regard for dangers that may be anticipated. There is no duty to render a bridge absolutely safe nor to rebuild a structure such as the Monroe Street Bridge.

"The foregoing duty includes the duty to maintain reasonable guardrails or barriers if the situation alongside the roadway, even though outside the roadway, is inherently dangerous; and the duty to maintain reasonable warning signs if the roadway is of such a character as to mislead a person using the roadway in a reasonably careful manner. Inherently dangerous, as used herein, means a danger existing at all times so as to require special precautions to prevent injury.

"Whether or not the warning signs, guardrails or barriers are reasonable depends upon the conditions that exist at the particular area involved and whether these devices accomplish the purpose of rendering the street or bridge reasonably safe for usual and ordinary travel."

[2]WPI 140.01:

"A [county] [city] [town] [state] has a duty to exercise ordinary care in the [construction] [maintenance] [repair] of its public [roads] [streets] [sidewalks] to keep them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety."

inherently dangerous, and a duty to maintain reasonable warning signs. According to the plaintiff, the vice of the instruction is that it allows the jury to believe that the City's duty is simply to make the Monroe Street Bridge safe for usual and ordinary travel, which could be interpreted to cover only cars traveling at approximately the speed limit in their proper lanes of traffic. Thus, the car sliding on ice or wet pavement, or swerving out of its lane to avoid a pedestrian or an oncoming car or one going out of control for whatever reason, is not engaged in usual or ordinary travel. Thus, plaintiff argues that the Ratay vehicle was not engaged in the usual and ordinary travel when it went out of control and struck the guardrail. Since it was not doing that, the jury may have erroneously found that the City did not owe the Ratays any duty of care.

Plaintiff urges that the instructions should have been broadened so that there was a duty on the part of the City to keep the roadways and bridges reasonably safe for persons using them under such conditions that *could be reasonably anticipated.*

Plaintiff's proposed instructions deleted any reference to "usual and ordinary travel" and required the City to keep the bridge reasonably safe for conditions that could be reasonably anticipated. The court's instruction was an amalgamation, and the effect was more favorable to plaintiff than WPI 140.01, in that there was added "with reasonable regard for dangers that may be anticipated." Thus, in the instruction given there was no limitation of the City's duty only to persons using streets in a proper manner and exercising ordinary care for their own safety. The court was concerned that if the jury should find the plaintiffs were contributorially negligent, it might preclude recovery altogether, which would be improper under comparative negligence law. Thus, the abstract duty was placed upon the City, regardless of who was using the bridge or the negligence of that person.

As stated in *Bartlett v. Northern Pac. Ry.*, 74 Wn.2d 881, 883, 447 P.2d 735 (1968):

[A] municipality is under no duty to erect barriers sufficient to prevent automobiles traveling at a high rate of speed from crashing through. . . . It is obvious that the erection of barriers sufficient to prevent a speeding vehicle from crashing through could result in injuries as serious as those that would be suffered if the vehicle were to crash through a weaker barrier and collide with whatever lay beyond. Such would not be the case where a barrier is erected to stop slow–moving vehicles from plunging off a bridge 35 feet above the ground.

There is considerable case support for the position found in the Washington Pattern Instruction. *Provins v. Bevis,* 70 Wn.2d 131, 138, 422 P.2d 505 (1967):

[W]e are committed to the rule that, although a county is not an insurer against accident nor a guarantor of the safety of travelers upon its roadways, it is nevertheless obligated to exercise ordinary care to keep its public ways in a safe condition for ordinary travel. . . . And, this obligation includes the responsibility to post adequate and appropriate warning signs when such are required by law, or where the situation, to the county's actual or constructive knowledge, is inherently dangerous or of such a character as to *mislead a traveler exercising reasonable care.*

(Italics ours.)

In *Barton v. King County,* 18 Wn.2d 573, 576, 139 P.2d 1019 (1943), the court stated:

The gist of the decisions in these cases, . . . is that the municipality *may* be chargeable with negligence for failure to maintain warning signs or barriers *if the situation along the highway is inherently dangerous or of such character as to mislead a traveler exercising reasonable care.*

This is repeated in *Bartlett v. Northern Pac. Ry., supra,* where, commenting on a reversal of a summary judgment granted for the defendant, the court said at page 882:

(1) that a jury could find the situation at the locus in quo was inherently dangerous, or of such a character as to have misled a traveler exercising reasonable care; and (2) if the jury should so find, then the adequacy of the warnings given and of the barriers (curbs and guardrails)

maintained would likewise be a jury question and not an issue to be determined on summary judgment.

In *Raybell v. State,* 6 Wn. App. 795, 496 P.2d 559 (1972), the court reaffirmed *Bartlett* and *Barton* and stated at page 802:

This rule does nothing more nor less than impose upon a municipality the duty of maintaining its streets or highways in a reasonably safe condition for the users, and where the condition in or along the highway is inherently dangerous *or* deceptive *to the reasonably prudent traveler,* the rule requires the municipality to reasonably and adequately warn of the hazard and maintain adequate protective barriers where such barriers are shown to be practical and feasible.

(Italics ours.)

In *Boeing Co. v. State,* 89 Wn.2d 443, 446, 572 P.2d 8 (1978), the court reaffirmed *Provins v. Bevis, supra,* stating:

It is the duty of a municipality to exercise ordinary care in the repair and maintenance of its public highways, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety.

In the latest case on this question, *Stewart v. State,* 92 Wn.2d 285, 597 P.2d 101 (1979), involving an accident on a bridge, the court stated at page 299:

Rather its [State's] duty is to maintain its roads in such a condition that they are reasonably safe for persons using them in a proper manner and exercising ordinary care for their own safety.

citing *Provins v. Bevis, supra.* Plaintiff's response to that language is that it is historically in error. If it is, which we do not decide, the trial court recognized the problem and modified the instruction to allow the plaintiff effectively to argue his case, particularly with the added burden cast on the city referring to dangers that may be anticipated.

■ Thus, the language in the cases seems to suggest the duty of the City is limited to travelers using ordinary care. This is consistent with the rule that the City is not an

insurer or guarantor of the safety of the streets or bridges. It is also consistent with the common–law duty to exercise reasonable care.[3]

The instruction given by the court finds further support in *Berglund v. Spokane County,* 4 Wn.2d 309, 314, 103 P.2d 355 (1940):

> "A municipality charged with the duty of maintaining bridges is not bound so to maintain such bridges as to make them absolutely safe; its obligation is merely to exercise ordinary care in keeping the bridges under its control in a safe condition for all usual and ordinary modes of travel and transportation of property over them, with reasonable regard for possible or common dangers that may be expected. Stated in other words, the authority charged with the maintenance and repair of a bridge must use ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated, having due regard to the character of travel, the incidental purposes for which the highway may be lawfully used, and the nature of possible danger at the point in question." 8 Am. Jur. 936, § 38.

The instruction provided ample grounds for the plaintiff to argue his theory of the case. There is little difference between the language given by the court "with reasonable regard for dangers that may be anticipated" and that requested by the plaintiff, "conditions that could be reasonably anticipated." We do not decide if it should have been limited to travelers exercising reasonable care. Thus, there was no error.

Plaintiff's second assignment of error is that the advent of comparative negligence makes the Washington Pattern Instruction 140.01 and kindred instructions out of date. We do not find that the introduction of the words "usual and ordinary travel" has this effect. Actually, the duty is owed to somebody.

---

[3]In those states which may require the maintenance of guardrails sufficient to prevent a car from breaking through, the different rule would apply. There is no such rule in the state of Washington. *See Zeidwig v. Derby,* 129 Conn. 693, 31 A.2d 24 (1943); *Thorbjohnson v. Rockland–Rockport Lime Co.,* 309 A.2d 240 (Me. 1973).

Plaintiff's proposed instruction No. P–7 states that the City would have the duty to keep the roadways and bridges in such a condition that they would be "reasonably safe for those persons using the roadway and bridges in a manner and under conditions that could be reasonably anticipated by the City . . ." Thus, it too would refer to a potential plaintiff.

■ The City's duty with respect to maintaining roads and bridges remained the same after comparative negligence was adopted. That doctrine did not enhance the duty. It merely removed the bar to recovery when plaintiff had been negligent in any degree. Plaintiff's possible contributory negligence will not come into operation until the first hurdle has been overcome, namely, that the City was negligent. Since no negligence was found on the part of the City, potential errors relating to comparative negligence are moot. No new liability was created by comparative negligence, *Godfrey v. State*, 84 Wn.2d 959, 530 P.2d 630 (1975); rather, it removed a bar to recovery.

■ Plaintiff complains that instructions Nos. 12 through 17 overemphasized the City's theory of the case and denied plaintiff a fair trial, citing *Ulve v. Raymond*, 51 Wn.2d 241, 317 P.2d 908 (1957). There the court submitted 14 instructions on contributory negligence. It is within the trial court's discretion to determine how many instructions should be given regarding each litigant's theory of the case. *Cantrill v. American Mail Line, Ltd.*, 42 Wn.2d 590, 599, 257 P.2d 179 (1953).

In *Ulve*, contributory negligence was alleged. In that case the decedent had missed the bridge and drove into a river during a fog. There were no eyewitnesses to the accident. A portion of the guardrail was broken off; hence, the question of speed was properly injected in the case. The only evidence of the decedent's negligence depended on interpretation of physical facts involving the determination of speed. The Supreme Court, however, found that 14 instructions that dealt specifically with contributory negligence resulted in overemphasis of the City's theory of the case.

■ Here there was no objection to these instructions so there was no chance given to the trial court to correct the error, if any. Normally, lacking an objection made in the trial court, an alleged error will not be considered on appeal.

The cognizance we take on appeal of alleged erroneous instruction in the trial court depends upon the action appellant took in that court. The trial court must have been sufficiently apprised of any alleged error to have been afforded an opportunity to correct the matter if that was necessary. CR 51(f). In *Nelson v. Mueller,* 85 Wn.2d 234, 238, 533 P.2d 383 (1975), we quoted from *Roumel v. Fude,* 62 Wn.2d 397, 383 P.2d 283 (1963), as follows:

> Our rules require that exceptions to instructions shall specify the paragraphs or particular parts of the charge excepted to and shall be sufficiently specific to apprise the trial judge of the *points of law* or question of fact in dispute. The purpose is *to enable the trial court to correct any mistakes in the instructions in time to prevent the unnecessary expense of a second trial.*

Where such exception is not taken, the alleged error will not be considered on appeal. *Nelson v. Mueller, supra.*

*Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 114, 587 P.2d 160 (1978).

■ The instructions must be read as a whole and the error, if any, in an instruction ordinarily is not prejudicial if the complaining party's theory can be argued under other instructions. *Nelson v. Mueller,* 85 Wn.2d 234, 533 P.2d 383 (1975). We find no undue repetition in this case. Instructions Nos. 12 through 17 covered a variety of topics rather than laboring one point. One instruction covered a driver's general duty; the next, speed laws; the following, driving while affected with intoxicants; then blood alcohol evidence; followed by violation of ordinances of negligence; and lastly, the passenger's duty (which referred to Mrs. Ratay) while riding with an intoxicated driver. They all expressed different concepts of law which were applicable to the case. Thus, there was no error.

Even if these instructions were improper, and even if there had been an objection and the trial court given an opportunity to correct its error, it would be harmless since the jury's verdict found the City of Spokane was not negligent and these instructions plaintiff complained of applied only to the question of plaintiffs' contributory negligence. That question was never reached.

The court gave 24 instructions in this case: 8 were stock instructions; 4 were damage instructions, including general damages to the children and the estate; mortality tables and 6 instructions (12 through 17) were discussed previously; No. 18 indicated negligence was not imputed to the spouse; No. 19 permitted evidence of sobriety; and the remaining few adequately explained the duty of both the plaintiffs and defendant. There was no overemphasis for either side.

We find no prejudicial error, and the judgment rendered under the jury's verdict is affirmed.

GREEN, C.J., and MUNSON, J., concur.