[No. 7393–1–I. Division One. August 18, 1980.]

GUDRUN EMMA HANSEN, *Appellant,* v. WASHINGTON
NATURAL GAS COMPANY, ET AL,
*Respondents.*

*Miracle, Pruzan & Nelson* and *Steven R. Pruzan,* for
appellant.

*Lee, Smart, Cook, Biehl & Martin* and *John Patrick Cook,* for respondents.

RINGOLD, J.—Plaintiff Gudrun E. Hansen sued defendants Washington Natural Gas Company (W.N.G.) and the City of Seattle for damages. After a jury verdict in favor of Hansen, the trial judge granted a judgment n.o.v. We reverse.

En route to work in the morning, Hansen customarily walked westbound on West Emerson Street, an arterial in the Magnolia section of Seattle. She generally proceeded along the south side of Emerson Street past its intersection with Viewmont Way, then walked diagonally across West Emerson Street approximately midway between Viewmont Way and Magnolia Boulevard to the bus stop on the north side of Emerson Street.

On the morning of October 6, 1977, however, upon reaching the corner of Emerson Street and Viewmont Way, Hansen observed a W.N.G. truck parked on the south side of Emerson Street, excavation being done on the north side of Emerson Street, and two holes in the roadway, each covered by wooden planks to allow vehicular traffic. The work area was surrounded by orange cones and sawhorse–type barricades, except the area of planks. Rather than walking along the sidewalk and crossing at the intersection, Hansen started to diagonally cross Emerson Street to a point just west of the excavation. As she was crossing, she slipped on the plank covering one of the holes in the roadway, resulting in serious injuries which led to this suit. The jury returned a verdict finding total damage to Hansen for $50,000, but that her own negligence was a proximate cause of her injuries to the extent of 60 percent, and awarded her $20,000.

The basic question presented on appeal is whether the trial judge was correct in ruling that as a matter of law the defendants owed no duty to the plaintiff.

In *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978), our Supreme Court stated the test for setting aside a jury verdict:

[The motion admits] the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. . . . The trial court has no discretion and may grant the motion only where there is no competent evidence nor reasonable inference which would sustain a jury verdict in favor of the nonmoving party. If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.

(Citation omitted.) Applying that test, we hold that the granting of the judgment n.o.v. was improper.

Washington has consistently recognized the general rule that when a party brings an action in tort, regardless of the particular theory of liability relied upon, he or she has the burden of showing that:

(1) there is a statutory or common–law rule that imposes a *duty* upon defendant to refrain from the complained–of conduct and that is designed to protect the plaintiff against harm of the general type; (2) the defendant's conduct violated the duty; and (3) there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff.

*Rikstad v. Holmberg,* 76 Wn.2d 265, 268, 456 P.2d 355 (1969); *Maltman v. Sauer,* 84 Wn.2d 975, 530 P.2d 254 (1975); *Hojem v. Kelly,* 93 Wn.2d 143, 606 P.2d 275 (1980); *McLeod v. Grant County School Dist. 128,* 42 Wn.2d 316, 255 P.2d 360 (1953). The trial court in its oral ruling concluded that the City and W.N.G. owed no duty to protect Hansen from the risk of harm which befell her. Hansen argues that the trial court erred in granting the judgment n.o.v. because there were sufficient facts alleged to require a jury to consider the specific issues of duty, foreseeability and proximate cause.

The question of duty encompasses the risks foreseeable from the conduct of the alleged tort–feasor. As stated in *Rikstad v. Holmberg, supra* at 268:

The better considered authorities do not regard foreseeability as the handmaiden of proximate cause. To connect them leads to too many false premises and confusing conclusions. Foreseeability is, rather, one of the elements of negligence; it is more appropriately attached to the issues whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent.

Absent public policy to the contrary, a common law duty is measured by the foreseeability of the risk of harm to others. The rule is stated in 2 F. Harper & F. James, *Torts* § 18.2, at 1018–19 (1956):

[I]nquiry is made into *why* the particular act or omission complained of was negligent. This will be because the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor. This view would limit the scope of the duty accordingly: the obligation to refrain from that particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails.

The latter is the prevailing view. It means that in each case plaintiff must bring himself within the class of persons threatened by defendant's conduct. "Proof of negligence in the air, so to speak, will not do." The leading case on this point is *Palsgraf v. Long Island Railroad Co.* [248 N.Y. 339, 162 N.E. 99 (1928)].

(Footnotes omitted.) *See also* W. Prosser, *Torts* § 43, at 250 (4th ed. 1971).

The trial court instructed the jury:

Where construction work is being done on a city street, both the city and the company doing the work have a duty to exercise ordinary care to keep the public ways in

such a condition that they are reasonably safe for ordinary travel by persons using them in a manner that can be reasonably anticipated.

Instruction No. 10.

 Generally, there is a duty to maintain streets in a reasonably safe condition, to reasonably and adequately warn users of any inherently dangerous or deceptive conditions and, in certain instances, to erect and maintain adequate barriers. *Bartlett v. Northern Pac. Ry.*, 74 Wn.2d 881, 447 P.2d 735 (1968); *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 558 P.2d 811 (1976). The question of whether a general field of danger should have been anticipated is generally one of fact. *Berg v. General Motors Corp.*, 87 Wn.2d 584, 555 P.2d 818 (1976). The City had a duty to place a proper barricade on Emerson Street to maintain it in a condition reasonably safe for the ordinary travel of persons using it in a manner that can be reasonably anticipated. Testimony from a W.N.G. employee indicated that it was foreseeable that a pedestrian may walk on the planks within the barricade, and the company was constantly replacing them because they would become slippery, endangering pedestrians walking on them. If the risk is foreseeable, then there is a duty, and a defendant may be negligent. It was thus for the jury, not the court, to determine whether a duty was imposed on the City and W.N.G.

The defendants argue that the duty of the City and W.N.G. here is limited only to those persons using the street in a proper manner and that Hansen was violating the law by "jaywalking." The violation of the statute and ordinance was relevant to the issue of contributory negligence and proximate cause, upon which the jury was properly instructed, but not to the primary negligence of the defendants.

The City and W.N.G. rely on the holding of *Nelson v. Tacoma*, 19 Wn. App. 807, 577 P.2d 986 (1978) as dispositive of the issue in this case. The court there observed at page 811:

There was no showing that the street was unsafe for vehicular travel . . . Plaintiff in this case made no showing that the corner crosswalk was unsafe for pedestrian travel. It is irrelevant, because plaintiff didn't slip on the crosswalk or claim he crossed mid–block because of the condition of the crosswalk. Nor did the plaintiff slip on the street parallel to the sidewalk approaching the crosswalk . . .

Plaintiff was jaywalking. In effect he selected and created his own crosswalk mid–block, and insists the city should have made it safe for him. To permit him to recover on the basis that the city was negligent would require us to hold that the city must maintain the full block of a street safe for pedestrian cross travel when the sidewalk, or even a portion thereof, is blocked. This we will not do. At the maximum, plaintiff would have had to walk no more than one–half block to reach a crosswalk. There is no allegation or suggestion that the area in the street adjacent to the sidewalk was not reasonably safe. Plaintiff did not slip on such adjacent area, but rather in the street normally used only for vehicular traffic as he was crossing it.

*Nelson* was decided on a motion for summary judgment. The only defect in the street claimed was a natural accumulation of snow on the streets and sidewalk which the plaintiff contended should have been removed for his benefit. Here, both sides of the street were disrupted by the construction work, and there was evidence that although the barricade was in the middle of the block, it was foreseeable that a party may walk there. In *Nelson,* no evidence was tendered relating to the foreseeability of Nelson's injury. *Nelson,* therefore, is distinguishable on its facts from the case at bench.

Great reliance was placed by the *Nelson* court on *Owens v. Seattle,* 49 Wn.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956), where the court stated:

A municipality is . . . obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for *persons using them in a proper manner and exercising due care for their own safety.*

(Italics ours.) The cited rule was correct when contributory negligence was a complete defense to a tort claim, but is not applicable since this state adopted comparative negligence. Instruction No. 10 properly presented the issue to the jury.

The judgment notwithstanding the verdict is reversed and the case is remanded for reinstatement of the jury verdict.

DURHAM–DIVELBISS, J., concurs.

JAMES, A.C.J. (dissenting)—I would affirm. To recover damages for the negligence of another, a complainant must prove (1) the existence of a duty, (2) a breach of that duty, (3) causation, and (4) damages. *Hojem v. Kelly,* 93 Wn.2d 143, 606 P.2d 275 (1980). In granting defendants' motion for a judgment n.o.v., the trial judge stated:

> There is no duty on the part of defendants to make the middle of the street, mid–block, safe for pedestrians who might elect to leave the sidewalk in the middle of the block and angle illegally across the street through a construction area that is open and apparent and safe for cars.

My review of the record impels me to the same conclusion.

I cannot agree with the majority's conclusion that the rule of *Owens v. Seattle,* 49 Wn.2d 187, 299 P.2d 560, 61 A.L.R.2d 417 (1956), is no longer applicable because this State has adopted comparative negligence. I repeat the majority's quotation from *Owens* at page 191 with changed emphasis:

> A municipality is not an insurer against accident nor a guarantor of the safety of travelers. It is, however, obligated to exercise *ordinary care* to keep its public ways in a *reasonably safe condition* for persons using them in a proper manner and exercising due care for their own safety.

(Italics mine.) In this case, there was *no* evidence that defendants failed to exercise ordinary care to keep West Emerson Street in a reasonably safe condition. Mrs.

Hansen testified that although there was no reason why she could not have continued to walk in a westerly direction on the south side of Emerson, she elected to diagonally cross in the middle of the block. She saw that an excavation had been made in the street and that it was covered with a plank which was wet, but she nevertheless stepped on it, slipped and fell. She testified as follows:

Q As you walked out into the street, angling down the street toward the bus, you were still aware that there were these planks covering an excavation in the street as you walked toward it, were you not?

A Part of it only. I mean, it was filled with cement, and part of it was just wood.

Q With the wood?

A Uh–huh.

Q But you were aware that the wood was there?

A Yes.

Q And even as you crossed the street toward it, you were aware that it was there?

A Yes.

Q And when you stepped on it, you were aware it was there?

A Yes.

Q And you were aware that you were about to step on it?

A Yeah.

Q And it was after you stepped on it that you fell; is that right?

A Yes.

Q Did you slip—

A Yes.

Q —or did you trip, or what happened? You slipped?

A I slipped.

Q So you actually put your foot on the board and then your foot slipped; is that right?

A Yes.

Q But there was nothing in the world at that point in time that kept you from seeing that those boards were there. You did see the boards and you knew you were going to step on them; is that correct?

A Yes.

Q And you knew that those boards weren't normally in the street; they were something to do with the men that were working there. Isn't that right?

A Yeah, I knew they were to fill up so the traffic could go over there.

Q In other words, the reason they were there was because the men had made a hole there and they wanted to put something over the hole so that cars could go back and forth;—

A Yes.

Q —isn't that right?

A Yes.

Q And the part of the street that you were walking in is a part that is normally reserved for cars to drive in; isn't that right?

A Well, the whole street is supposed to be for cars.

I agree that instruction No. 10 is a correct statement of the law. But if, as in this case, there is *no* evidence of any failure to "exercise ordinary care to keep the public ways in such a condition that they are reasonably safe for ordinary travel by persons using them in a manner that can be reasonably anticipated" (instruction No. 10), there is no issue of fact to submit to the jury. Mrs. Hansen presented no evidence which would support a finding that at the time she elected to cross Emerson Street it was not "reasonably safe for ordinary travel by persons using [it] in a manner that [could] be reasonably anticipated."

I am at a loss to understand the majority's conclusion that the defendants had a duty to place a "proper barricade" on Emerson Street. A barricade which would have prevented Mrs. Hansen from stepping on the plank would necessarily have prevented the use of the street for vehicular traffic. The defendants' duty was to do whatever was necessary to reasonably make it known that a small portion of the paving had been temporarily replaced with a plank. In *Bartlett v. Northern Pac. Ry.,* 74 Wn.2d 881, 447 P.2d 735 (1968), relied on by the majority as establishing a duty to warn, our Supreme Court stated:

> The gist of the decisions in these cases, . . . is that the municipality *may* be chargeable with negligence for failure to maintain warning signs or barriers *if the situation along the highway is inherently dangerous or*

*of such character as to mislead a traveler exercising reasonable care.*

*Bartlett,* at 882, quoting *Barton v. King County,* 18 Wn.2d 573, 576, 139 P.2d 1019 (1943). In this case, not only has Mrs. Hansen failed to prove that the street work was "inherently dangerous," even for pedestrian traffic,[1] but also admitted she was fully aware of the presence of the plank before she stepped on it. The condition of the street was open and could not have misled Mrs. Hansen. Both the jury and the majority have made Washington Natural Gas and the City insurers of Mrs. Hansen.

Moreover, assuming that defendants had a duty to warn Mrs. Hansen of the condition of the vehicular roadway, their purported breach of that duty was not a proximate cause of Mrs. Hansen's injury. The trial judge stated after hearing argument on plaintiff's motion for reconsideration:

> I think that the evidence shows that any act of the defendant was not a proximate cause in any event, because under the evidence she saw and understood everything that existed there— . . .

Mrs. Hansen's testimony clearly establishes that even if defendants' warnings were inadequate, that fact would be immaterial. She was fully aware of the situation, never intended to utilize the sidewalk which was clear and unobstructed, and intentionally proceeded to jaywalk through the middle of an open and visible construction site. As 2 F. Harper & F. James, *Torts* § 18.2, at 1019 (1956) states, "'Proof of negligence in the air, so to speak, will not do.'"

Finally, in seeking to distinguish *Nelson v. Tacoma,* 19 Wn. App. 807, 577 P.2d 986 (1978), the majority has stated on page 132, "Here, both sides of the street were disrupted by the construction work, . . ." But, whatever the condition of the vehicular portion of the street, it is undisputed that

---

[1]The majority assumes that the street was inherently dangerous. However, the only evidence relating to the inherently dangerous condition was the fact that Mrs. Hansen slipped and fell. Washington cases have consistently recognized that the mere fact of an injury is not sufficient to prove a dangerous condition. *See, e.g., Brant v. Market Basket Stores, Inc.,* 72 Wn.2d 446, 433 P.2d 863 (1967).

*the sidewalk on the south side of Emerson Street was not
obstructed in any way.* The statement in *Nelson* at page
811, which the majority quotes, precisely describes Mrs.
Hansen's conduct:

> Plaintiff was jaywalking. In effect [she] selected and
> created [her] own crosswalk mid–block, and insists the
> [defendants] should have made it safe for [her].

Mrs. Hansen's injury was not the proximate result of the
breach of any duty owed her by the defendants. *Lee v.
Sievers,* 44 Wn.2d 881, 271 P.2d 699 (1954).

Reconsideration denied September 18, 1980.

Review granted by Supreme Court November 7, 1980.