[No. 47325–1. En Banc. July 9, 1981.]

GUDRUN EMMA HANSEN, *Respondent*, v. WASHINGTON NATURAL GAS COMPANY, ET AL, *Petitioners*.

*Lee, Smart, Cook & Martin, P.S.,* by *John Patrick Cook,* for petitioners.

*Miracle, Pruzan & Nelson* and *Steven R. Pruzan,* for respondent.

DOLLIVER, J.—En route to work in Seattle on the morning of October 6, 1977, plaintiff Gudrun E. Hansen, heading west on Emerson Street, jaywalked diagonally across Emerson Street to catch her bus. The south side of Emerson from which Mrs. Hansen embarked on her jaywalking is paralleled by a sidewalk. This sidewalk goes to the next intersection, Magnolia Boulevard. The bus stop is on the north side of Emerson Street, very near to the intersection of Magnolia at Emerson. While in the street plaintiff slipped on a plank placed there by defendant Washington Natural Gas Company to cover an excavation. The covered excavation was located toward the middle of Emerson Street between West Viewmont Way and Magnolia Boulevard. There is a grassy path but no sidewalk on the north side of Emerson. A pile of earth from the excavation, directly to the north, blocked the path.

Barricades had been placed in various locations surrounding the area. Additionally, a truck of defendant Gas Company was parked on Emerson Street with the appropriate warning devices. As a result of this accident, plaintiff sustained serious injuries. The jury found total damages for plaintiff of $50,000 but reduced the award to $20,000, finding plaintiff was contributorially negligent. The trial court granted a judgment notwithstanding the verdict. The Court of Appeals reversed and remanded for the reinstatement of

the jury verdict. *Hansen v. Washington Natural Gas Co.,* 27 Wn. App. 127, 615 P.2d 1351 (1980).

Plaintiff's theory was that the defendants had both a common law duty to protect her from harm suffered in this manner, and a statutory duty (based on city ordinances) to provide adequate warnings of the allegedly dangerous condition.

■■ Negligence in common law consists of (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975). In *Berglund v. Spokane County,* 4 Wn.2d 309, 313, 103 P.2d 355 (1940), the court held that a "municipality . . . [is] obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using such ways in a proper manner and exercising due care for their own safety."

The scope of this duty is illustrated in *Nelson v. Tacoma,* 19 Wn. App. 807, 577 P.2d 986 (1978). There a pedestrian crossed a street in midblock to reach his parked car. It had been snowing that day and the sidewalks were blocked with snow. As the plaintiff crossed the street, he slipped and fell on the ice. The court refused recovery stating:

> Plaintiff was jaywalking. In effect he selected and created his own crosswalk mid–block, and insists the city should have made it safe for him. To permit him to recover on the basis that the city was negligent would require us to hold that the city must maintain the full block of a street safe for pedestrian cross travel when the sidewalk, or even a portion thereof, is blocked. This we will not do. At the maximum, plaintiff would have had to walk no more than one–half block to reach a crosswalk. There is no allegation or suggestion that the area in the street adjacent to the sidewalk was not reasonably safe. Plaintiff did not slip on such adjacent area, but rather in the street normally used only for vehicular traffic as he was crossing it. In reaching this disposition, we need not consider whether a foot of snow on the sidewalk, with no allegation that it was rough, uneven, or icy, rendered the

sidewalk impassable, forcing pedestrians into the street. *Nelson,* at 811.

In this case, the defendant Gas Company had covered an excavation located toward the middle of an arterial away from any intersection. Barricades were visible on both sides of the street warning traveling automobiles and pedestrians of construction work. The means of warning utilized by the defendant were reasonable and evinced the exercise of ordinary care. In fact, there was little else the Gas Company could have done except to have placed barricades on or around the covered excavation. This action, however, itself would have created an unsafe road condition for the traveling automobiles or have prevented the use of the street for motor vehicles altogether. There was no reason for the Gas Company to believe that portion of the street would be utilized by pedestrians.

Plaintiff urges us to broaden the scope of common law by extending it to all foreseeable travelers. To support this contention, the plaintiff cites language found in 40 Am. Jur. 2d *Highways, Streets, and Bridges* § 568 (1968), which reads:

> A person desiring to cross a street, either in the night-time or in the daytime, is not confined to a crosswalk, but may assume that all parts of the street which are intended for travel are reasonably safe, and may therefore cross it at any point without being guilty of negligence as a matter of law.

The cited section, however, refers to the contributory negligence of the person crossing the street. That is not the question here. Rather, it is the negligence of the City of Seattle or the Gas Company. There is, to use the language of instruction No. 10, simply no evidence of any failure by defendants to "exercise ordinary care to keep the public ways in such a condition that they are reasonably safe for ordinary travel by persons using them in a manner that can be reasonably anticipated." The Court of Appeals relies on *Bartlett v. Northern Pac. Ry.,* 74 Wn.2d 881, 447 P.2d 735 (1968) (citing *Barton v. King County,* 18 Wn.2d 573, 576,

139 P.2d 1019 (1943)), as establishing a duty to warn. There the court said:

> [A] municipality *may* be chargeable with negligence for failure to maintain warning signs or barriers *if the situation along the highway is inherently dangerous or of such character as to mislead a traveler exercising reasonable care.*

*Bartlett,* at 882.

There is no evidence here either of inherent danger or of the plaintiff being misled. The fact of injury is not, of course, sufficient to prove a dangerous condition. *Brant v. Market Basket Stores, Inc.,* 72 Wn.2d 446, 433 P.2d 863 (1967).

The Court of Appeals further held that the rule expressed in *Berglund* and *Nelson* is no longer applicable since the adoption of comparative negligence in this state. This holding is erroneous. The adoption of comparative negligence does not create a new liability where none previously existed. Rather, recovery is now permitted where it was previously denied after liability has been established. *Godfrey v. State,* 84 Wn.2d 959, 530 P.2d 630 (1975). The doctrine of comparative negligence does not enhance duty. It merely removes the bar to recovery when the plaintiff has been negligent. *Prybysz v. Spokane,* 24 Wn. App. 452, 601 P.2d 1297 (1979).

In granting the judgment notwithstanding the verdict, the trial court observed:

> There is no duty on the part of defendants to make the middle of the street, mid–block, safe for pedestrians who might elect to leave the sidewalk in the middle of the block and angle illegally across the street through a construction area that is open and apparent and is safe for cars.

We agree.

Plaintiff's alternative ground of recovery is that defendants owed her a statutory duty of care which was subsequently breached. We are urged to find a statutory violation by defendants resulting in negligence per se. In

particular, plaintiff cites two Seattle ordinances which were allegedly violated. They read in part as follows:

> Obstructions in public places during daylight hours shall have sufficient barricades posted in such a manner as to indicate plainly the danger involved.

Seattle City Code § 15.40.010.

> The City Engineer is authorized to place barricades and warning lights at unguarded or inadequately guarded excavations, obstructions, or other dangerous conditions . . .

Seattle City Code § 15.40.030.

The trial court instructed the jury with regard to these ordinances and told them that the violation of one or both of them was negligence per se. It is plaintiff's theory that the jury could have reasoned that additional signs and barricades at the corner intersection of West Emerson and West Viewmont Way could have been erected. Since they were not, a statutory violation was present and plaintiff should, therefore, recover. The purpose of such a barricade, according to the theory of plaintiff, would be to warn pedestrians not to use the intersection because the grassy path on the north side of Emerson Street was blocked by a pile of earth from the excavation.

 Where there is an alleged charge of negligence per se due to a statutory violation, there also must be a causal connection between the negligence arising from the violation of the ordinance and the accident itself before a cause of action arises. *France v. Peck,* 71 Wn.2d 592, 430 P.2d 513 (1967); *Moyer v. Clark,* 75 Wn.2d 800, 454 P.2d 374 (1969). "'Proof of negligence in the air, so to speak, will not do.'" 2 F. Harper & F. James, *Torts* § 18.2, at 1019 (1956). The determination of the causal connection is usually one for the jury. However, when, as here, the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, it is a question of law for the court. *France v. Peck, supra.*

From the testimony of plaintiff, it is plain that any additional barricades would have had no effect on the action

plaintiff was determined to take. Plaintiff saw what she was getting herself into, yet totally disregarded all visible warnings. From plaintiff's testimony, it is apparent she was fully aware of the situation in the street. She saw it and understood it. She chose to ignore the sidewalk, to jaywalk into a clearly visible construction site, and to step on the wet plank. Plaintiff testified the pile of earth would not have blocked her normal way of walking to the bus stop. She did not use the portion of the grassy path on which the earth pile rested in order to reach the bus stop. No barricades at the corner of West Emerson and West Viewmont Way would have deterred plaintiff in her determination to jaywalk or would have prevented this accident from happening.

When the condition is known, there is no necessity for signs and barriers. *Lee v. Sievers,* 44 Wn.2d 881, 271 P.2d 699 (1954). Any lack of barricades was not a proximate cause of the accident. As noted by the trial court in granting the judgment notwithstanding the verdict:

> The plaintiff's argument is that there should be a sign saying to a pedestrian, "Don't do that." The law and the ordinance [do] not require that there be, in order to be sufficient barricades, barricades telling an ordinary pedestrian what any ordinary pedestrian ought to know and what the defendants can assume they will know.

A judgment notwithstanding the verdict may be granted where there is no competent evidence or reasonable inference which would sustain a jury verdict. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 586 P.2d 845 (1978).

The Court of Appeals is reversed and the judgment notwithstanding the verdict is reinstated.

BRACHTENBACH, C.J., and STAFFORD, UTTER, HICKS, WILLIAMS, and DIMMICK, JJ., concur.

DORE, J. (dissenting)—The trial court granted judgment notwithstanding the verdict of the jury, stating that plaintiff failed to establish defendants' negligence as the proxi-

mate cause of plaintiff's injury. Plaintiff appeals from this ruling.

In passing upon such a motion, the evidence, and all reasonable inferences therefrom, must be viewed in a light most favorable to the nonmoving party, and if there is substantial evidence supporting the verdict, the verdict must stand. *Haft v. Northern Pac. Ry.,* 64 Wn.2d 957, 395 P.2d 482 (1964). All material evidence favorable to plaintiff, as the party who benefited from the verdict, is to be taken as true by the court. *Grange v. Finlay,* 58 Wn.2d 528, 364 P.2d 234 (1961). The question before this court is whether there is sufficient evidence of defendant's negligence to support the jury verdict.

The Washington Natural Gas Company (Gas Company) had obtained a permit from the City of Seattle (City) for the purpose of installing and maintaining the Gas Company's gas lines. The permit authorized the Gas Company to make excavations in the street, to cover holes, and to place barricades in crucial locations so as to alert the public to potential hazards caused by these excavations.

On October 6, the day of the accident, the Gas Company was installing gas lines on West Emerson Street, a 4–lane city street which runs generally in an east–west direction. It is intersected by West Viewmont Way and further to the west by Magnolia Boulevard West. The north side of West Emerson in this area borders Discovery Park, and the walkway provided to pedestrians on the north side of West Emerson Street is a grassy path. The south side of West Emerson Street between Viewmont and Magnolia contains a paved sidewalk.

The plaintiff habitually walked along the paved sidewalk on the southern side of West Emerson to the middle of the block between West Viewmont and Magnolia and then crossed the street to the bus stop on the north side of West Emerson. Plaintiff and her neighbor, Sandoval, testified that October 6 was an unusual day because it marked their first awareness of any street construction in this area. When plaintiff reached the construction site that morning,

she noted that the Gas Company's repair vehicle blocked her customary route. Because of this obstruction, she altered her course and crossed West Emerson near the intersection of West Emerson and West Viewmont. Upon reaching that intersection, plaintiff observed a large pile of dirt on the grassy walkway on the north side of West Emerson. As a consequence, she crossed at a diagonal direction from the intersection around the dirt pile. At this point, plaintiff testified, she slipped and fell on a wooden plank which covered an excavation made by the Gas Company.

Generally, there is a duty to maintain streets in a reasonably safe condition, to reasonably and adequately warn users of any inherently dangerous or deceptive conditions and, in certain instances, to erect and maintain adequate barriers. *Bartlett v. Northern Pac. Ry.,* 74 Wn.2d 881, 447 P.2d 735 (1968); *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 558 P.2d 811 (1976). The question of whether a general field of danger should have been anticipated is generally one of fact. *Berg v. General Motors Corp.,* 87 Wn.2d 584, 555 P.2d 818 (1976). Testimony indicated that it was foreseeable that a pedestrian might walk on the planks within the barricade; also the company was constantly replacing them because they become slippery, endangering pedestrians walking on them. If the risk is foreseeable, then there is a duty to use reasonable care, and a defendant may be negligent if he fails to do so. However, it is for the jury, not the court, to determine whether a duty was imposed on the City and Washington Natural Gas Company.

The plaintiff pleaded and proved two Seattle ordinances which set forth specific duties for the Gas Company and for the City of Seattle when they are engaged in excavation work. Such ordinances required the defendants, during daylight hours, to draw attention to obstructions in public places, by posting sufficient barricades in such a manner to indicate plainly the danger involved.[1]

---

[1]Seattle Municipal Code § 15.40.010 provides:

It is undisputed that no barricades of any type were installed at the corner of West Emerson and West Viewmont Way or over the excavation where plaintiff fell and/or tripped.

The Gas Company owed the plaintiff not only a common law but a statutory duty to make the streets safe for both vehicular and *pedestrian* traffic. The majority states, "There was no reason for the Gas Company to believe that portions of the street would be utilized by pedestrians". This statement finds no support in the record. Hammac, the Washington Natural Gas supervisor and safety director, testified that it was his obligation to provide a traffic pattern that both facilitates a good flow of traffic and protects *pedestrians* in and around the working area, including excavations. His pertinent testimony on this matter follows:

Q. Isn't it true, Mr. Hammac, that there are certain— well, that you are supposed to be concerned in these kinds of construction projects with the safety of *pedestrians*?
A. Yes.
Q. And that is one of your jobs?
A. It's one of the, one of my responsibilities, yes.
Q. But you are not the actual person who is in charge of safety for the Gas Company, are you?
A. I am directly in charge of the safety of my employees and the people that they work around, yes.

. . .

Q. Isn't the idea, Mr. Hammac, that you want to provide a traffic pattern that will allow for the good flow of the traffic, but also to allow *pedestrians to be safe in and*

---

"Lights and barricades required.

". . . Obstructions in public places during *daylight hours* shall have *sufficient barricades posted* in such a manner as to indicate plainly the danger involved. Barricades may be removed at the completion of work or the removal of obstructions in public places providing the surface of the roadway has been restored to the satisfaction of the City Engineer." (Italics mine.)

Seattle Municipal Code § 15.40.020 provides:

"Posting on obstructions in arterial streets.

"Adequate advance warning lights and *barricades must be posted on all obstructions* in any arterial street as defined in the Traffic Code of the city." (Footnote omitted. Italics mine.)

*around this area?*
A. *Yes,* it is.
Q. And you know that when you are working on city streets that you are going to have people approaching these areas, don't you?
A. Yes, we do.
Q. In fact, you were aware, weren't you, that there was a bus zone right directly beyond where your construction was?
A. Yes, we were.
Q. *And you knew that people would have to use that bus zone, didn't you?*
A. *Yes.*

(Italics mine.)

Hammac also stated that the Gas Company had an obligation to cover up the excavations to allow traffic to flow, whether it be *pedestrian* or vehicular; also, that the boards placed over the excavation become smooth and slippery and he has had to throw them away when they are "no longer safe".[2]

The Seattle ordinances created a statutory duty which defendants owed plaintiff to provide sufficient barricades in order to alert members of the public, including the plaintiff, of dangers caused by such excavations.

Plaintiff testified that it had previously rained and the

---

[2]Q. Mr. Hammac, I want to talk for a moment about these boards that you have put in the middle of the street there where the excavation was. Now, what is the purpose of those boards?
A. It's to carry vehicular traffic.
Q. Vehicular traffic. So that the cars can drive over the area that's been excavated?
A. That's true, and it's to cover up the excavation.
Q. *It doesn't have anything to do with pedestrians?*
A. *Yes, it would.*
Q. Oh, it would have something to do with pedestrians? What does it have to do with pedestrians?
A. *It's to cover up the excavation to allow traffic to flow, whether it be pedestrian or vehicular.*
Q. You expect people to walk over these boards, don't you?
. . .
A. It's a possibility, yes.
(Italics mine.)

street was wet. She stated she slipped on the boards and that the "smoothness" of the boards made the surface different from the surface of the surrounding concrete. In addition, she had to watch for cars which were funneled into her line of traffic due to the placement of orange cones around the Gas Company's truck. Plaintiff's neighbor, Sandoval, was slowly maneuvering his automobile into the middle of the street, being channeled there by the orange cones seconds before the accident.

Sandoval said that he observed Hansen shortly before she fell and that she was looking at his vehicle at the time she abruptly went down on the boards. A permissible inference from Sandoval's testimony was that plaintiff either slipped on the boards and/or tripped on an extended saddle.

Defendants Exhibit 4

Picture showing level of boards below street surface; also metal "saddles" protruding above street surface.

Defendants' exhibits 4 and 5 illustrate that the boards placed over the excavation, where Hansen fell, were located

Defendants Exhibit 5

Picture showing excavation covered with boards; also a pile of dirt obstructing dirt walkway.

below the surface of the road. One observing the picture of the excavation (exhibit 4) can readily see that the boards over the subject excavation were below street level. Exhibit 4 also shows "saddles", apparently used to secure the boards, protruding above the excavation. Exhibits 4 and 5 depict the construction site as it looked at the time of the accident. The picture shows that no barricade was extended over the excavation where plaintiff fell. When Supervisor Hammac took plaintiff to the hospital, he told Mr. Hansen "that I had brought his wife into the hospital, that she had fell. And he says, 'How did it happen?' and I told him that

she had tripped over one of our street saddles in the street".[3]

As I previously analyzed, the question before us is whether substantial evidence supports the jury verdict.

If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. By "substantial evidence" is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.

*Grange v. Finlay, supra* at 529.

The defendants rely on the holding of *Nelson v. Tacoma,* 19 Wn. App. 807, 577 P.2d 986 (1978) as dispositive of this case. The plaintiff in *Nelson* contended that a natural accumulation of snow on the streets and sidewalk should have been removed for his benefit. Failure to do so created a defect in the street. No evidence was tendered relating to the foreseeability of Nelson's injury. Clearly, *Nelson* is distinguishable from the case at bench on its facts. In the instant case, both sides of the street were disrupted by the construction work. Furthermore, there was evidence that pedestrians would jaywalk across the street to reach their bus.

The majority opinion makes the following *factual* observations:

■ The means of warning utilized by the defendant were reasonable and evinced the exercise of ordinary care. [2] In fact, there was little else the Gas Company could have done *except to have placed barricades on or around the covered excavation.* This action, however, itself would have created an unsafe road condition for the traveling automobiles or have prevented the use of the street for motor vehicles altogether. . . .

. . .

■ From the testimony of plaintiff, it is plain *that any*

---

[3]The record illustrates confusion as to whether the trial court timely sustained an objection to this testimony. However, the jury heard Hammac's testimony on this issue, and it was never stricken nor was the jury told to disregard such testimony.

*additional barricades would have had no effect* on the action plaintiff was determined to take. [4] Plaintiff saw what she was getting herself into, yet totally disregarded all visible warnings.

(Italics mine.)

The jury, having been instructed on the defendants' duty under the Seattle ordinances to draw attention to dangers caused by excavations by means of placement of barricades, might well have found the defendants breached their duty in not placing a barricade directly *over* the boarded excavation. Had the defendants done so, this accident could have been avoided. The jury could have found that the placement of barricades *over* excavations is an easy, economical and effective way to warn both pedestrian and vehicular traffic of impending danger, especially when boards covering the excavation are wet and slick, and in some cases are at a level different from the street surface. The testimony was that the subject excavation was 2 feet wide and 6 feet long, which would have allowed it to be completely covered by a barricade. The number and proper placement of barricades in the subject case was a question of fact.

Fact finding is the exclusive prerogative of the jury, not the court. The jury, by its verdict, found that the defendants breached their duty of reasonable care which caused plaintiff's injuries. The court is bound by such findings, providing there is substantial evidence to support them.

## CONCLUSION

Substantial evidence was before the jury that the defendants owed a duty to the plaintiff to place coverings over the excavation in a manner so as not to cause accidents to pedestrians and/or vehicles. There was evidence that showed that the boards were smooth and wet, constituting a very slick and dangerous surface, and that the boards over the excavation were located below the street level. The difference in grade, foreseeably, could cause a pedestrian to be deceived and such deception might cause

one to slip and/or fall and sustain an injury. The evidence shows that the saddle, a metal device extending an inch or two above the street level, would constitute a hazard to a pedestrian in the event it was not observed. *See Wardhaugh v. Weisfield's, Inc.*, 43 Wn.2d 865, 264 P.2d 870 (1953). It was Hammac's opinion that the cause of the accident was that plaintiff tripped on the saddle protruding from the edge of the excavation. The Gas Company might have prevented the accident entirely if it had complied with the ordinance and placed barricades at the intersection of West Emerson and West Viewmont as well as over the excavation where plaintiff fell.

There is substantial evidence in the record to support the jury's verdict. I would affirm the Court of Appeals.

ROSELLINI, J., concurs with DORE, J.

Reconsideration denied September 14, 1981.