[Nos. 3865–3–III; 3885–8–III.   Division Three.   January 14, 1982.]

JAMES E. ANTHONY, *Respondent,* v. C. D. AMENDE
COMPANY, ET AL, *Appellants.*

*Philip A. Talmadge, Rodney J. Vessels, Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* and *John H. Rayback,* for appellant C. D. Amende Co.

*Kenneth O. Eikenberry, Attorney General,* and *Mark S. Northcraft, Assistant,* for appellant State.

*Thomas P. Keefe* and *Walthew, Warner, Keefe, Arron, Costello & Thompson,* for respondent.

Roe, J.—This case results from a car accident which occurred within an hour and at the same place as another accident on the same highway. On August 19, 1977, on Highway 97, approximately 10 miles north of Goldendale, there was a collision between a logging truck and a Pontiac automobile which resulted in the death of a passenger in the car. The state trooper who first arrived appointed two bystanders to direct traffic around the accident scene. He then called the Klickitat County sheriff's office for additional help, and gave first aid to the second passenger in the car. Shortly thereafter, three employees of the Department of Transportation arrived to help—Atkins, the supervisor, directed one, Cooper, to maintain traffic control and protect the scene, and the other, Keep, to go north of the scene, up a hill, but to stay close enough to Cooper to maintain eye contact in order to direct traffic. Keep was then about 750 feet north of Cooper and could see a car 900, or a truck 1,200, feet north. Keep then turned on the rotobeam and 4–way flashers on his truck. He was not wearing a reflective or colored vest and did not use flares or reflectorized signs at this time (10:30 a.m.) in his efforts to control traffic.

Approximately 1 hour after the first accident, and while traffic was being routed through the scene, a milk truck belonging to the defendant C. D. Amende Co. (Amende) and driven by Harrington was traveling south on Highway 97 at about 50 miles per hour and following 300 feet behind a car. When this car's driver applied the brakes, the truck's driver also applied the brakes and a few seconds later,

while traveling approximately 35 miles per hour, locked them. Harrington testified Keep was standing beside his pickup and waving his paddle. Keep, however, testified he stood on the center line of the highway, held his paddle as high as he could, and waved his left hand to signal Harrington to stop. The truck did not stop; instead, it moved into the northbound lane and continued south toward the scene of the first accident.

Cooper, who was stationed at the south end of the accident zone, was directing traffic around the scene in the southbound lane using a stop/slow paddle. When Keep stopped southbound traffic, he allowed northbound traffic to proceed. After Cooper had started traffic through his position, he saw the milk truck approaching Keep. Plaintiff Anthony's vehicle was second in a line allowed through by Cooper; the first car pulled off the road as the milk truck approached it. The milk truck first hit the Pontiac, damaged in the initial accident, and then veered right and hit plaintiff Anthony's pickup and another vehicle behind it.

Anthony was injured in the accident and his pickup destroyed. He sued both Amende and the State. Each defendant cross–claimed against the other for damages. The jury found each defendant 50 percent negligent and that the negligence of each caused the other's damage. It awarded Anthony $172,000 against both defendants and awarded neither defendant any damages. Amende moved for a new trial; this motion was denied and judgment was entered for plaintiff. Both Amende and the State appeal.

## State's Contentions

The State first argues that instructions Nos. 26,[1] 29,[2] and 30,[3] which instructed the jury that a driver may drive on the left when an obstruction exists, and the standard of

---

[1]Instruction No. 26 reads:

"A statute provides:

"Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

"When an obstruction exists making it necessary to drive to the left of the

care required of the police are misstatements of the law which require reversal. These instructions were apparently based on the rules of the road, RCW 46.61. Policemen, however, and others working in the right–of–way of any highway, are exempt from the rules of the road. RCW 46.61.030; *Dailey v. Lange,* 20 Wn. App. 12, 15, 578 P.2d 1322 (1978). Apparently, the trial court believed that because traffic was directed on the "wrong" side of the highway, the policemen were violating the law. It therefore instructed the jury under instruction No. 29 that the police must exercise more than ordinary care and in instruction No. 30 that the State has "the burden of justifying such action by showing that it exercised a higher standard of care . . ."

██ ██ We have been unable to discover, nor are we cited, any cases which directly reach the issue of the standard of care required by police and other state employees when directing traffic around or through an accident scene. We hold the trial court erred in instructing the jury the standard was one of more than ordinary care.

In ordinary circumstances, the responsibility of the police

---

center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard."
This instruction is based on RCW 46.61.100(1)(b).

[2]Instruction No. 29 reads:
"I instruct you that under all circumstances, policemen and highway officials are required to exercise due care, even in the performance of their duty, they in some circumstances may be exempted from strict compliance with traffic codes, but that work–necessitated exemption does not allow them to exercise less than due care, and *where they are violating the law* in the exercise of their duty *they must exercise more than ordinary care* for the protection of persons using the highway." (Italics ours.)

[3]Instruction No. 30 reads:
"The State of Washington in directing a motorist to drive on the wrong side of the roadway has the burden of justifying such action by showing that it exercised *a higher standard of care* than when directing such motorist to proceed in their [*sic*] normal or assigned lane of traffic." (Italics ours.)

in directing traffic is "to maintain due regard for the safety of all who would be affected by the discharge of such responsibility." *Prattini v. Whorton,* 326 So. 2d 576, 579 (La. App. 1976). Due regard is not self–defining. It begs the question, which is what degree or amount of care is due—slight, ordinary, or the highest. Where the police discover a hazardous condition, such as an icy road, and there is a possibility of impending danger to users of the highway, the duty is to take precautionary methods to prevent an impending tragedy. *Ritter v. State,* 74 Misc. 2d 80, 344 N.Y.S.2d 257, 269 (1972). While this statement from *Ritter* could be read to require a higher standard of care in an accident situation, it is merely a different way of stating the general rule that due care is that care which is required by the circumstances of the case. *Schuster v. St. Vincent ·Hosp.,* 45 Wis. 2d 135, 172 N.W.2d 421, 36 A.L.R.3d 1227 (1969); 57 Am. Jur. 2d *Negligence* § 67 (1971).

In its instruction No. 30, the court imposed on the State a "higher standard of care". This implies there was a special standard which should apply. We believe, instead, that the standard is still that of ordinary care,

> determined by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued.

W. Prosser, *Torts* § 31, at 149 (4th ed. 1971). Where there is a greater possibility of danger, of course, an increased *amount* of care is required. *Morehouse v. Everett,* 141 Wash. 399, 414, 252 P. 157, 58 A.L.R. 1482 (1926). This is not the same as imposing a higher standard; the standard of care remains the same, while the amount changes to meet each specific situation. *Ulve v. Raymond,* 51 Wn.2d 241, 317 P.2d 908 (1957); *Hubbard v. Embassy Theatre Corp.,* 196 Wash. 155, 82 P.2d 153 (1938); W. Prosser, *Torts* § 34, at 181. Whether the defendant has acted sufficiently to meet this amount is a question of fact for the jury.

*Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975),

considered the standard of care required of the police when responding to an emergency. RCW 46.61.035(2)(d) allows the driver of an authorized emergency vehicle to disregard regulations which govern the direction of movement when responding to an emergency call. It does not relieve the driver of such a vehicle from the duty to drive with due regard for the safety of others, nor does it protect him from the consequences of his reckless disregard for their safety. RCW 46.61.035(4). Although *Mason* is not strictly on point, as it involved acts taken in the face of an emergency, it has some utility in resolving the present question. Here, there was no present emergency, but only the activities of state employees *after* an accident occurred. Since slight care is required in an emergency, at this accident scene the standard of care is thus more than slight care and reaches the level of ordinary care.

This case is also analogous to those involving the State's duty to maintain the public highways. In *Provins v. Bevis,* 70 Wn.2d 131, 138, 422 P.2d 505 (1967), the court held a county is obligated to exercise ordinary care in the repair and maintenance of the highways, including

> the responsibility to post adequate and appropriate warning signs . . . where the situation, to the county's actual or constructive knowledge, is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care.

*See also Stewart v. State,* 92 Wn.2d 285, 597 P.2d 101 (1979); *Owens v. Seattle,* 49 Wn.2d 187, 299 P.2d 560, 61 A.L.R.2d 417 (1956) (municipalities); *Meabon v. State,* 1 Wn. App. 824, 463 P.2d 789 (1970) (state). The question of the adequacy and appropriateness of such warnings must be answered by a jury.

Thus, the trial court erred in instructing the jury that the State had a higher burden of care. The burden on the State is still one of ordinary care under the circumstances, although the acts taken by the trained state employees in warning oncoming traffic and in directing it around the scene might of necessity vary according to the circum-

stances.

We therefore reverse and remand to the trial court for a new trial on the issue of liability only, as there has been no error assigned to the proof or extent of Anthony's damages. *France v. Peck*, 71 Wn.2d 592, 599, 430 P.2d 513 (1967).

As between plaintiff Anthony and defendant Amende, the amount of Anthony's damages and Amende's liability to Anthony has been decided and is not subject to retrial. What is subject to retrial is the liability of the State as regards Amende and the plaintiff.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied March 22, 1982.

Review denied by Supreme Court May 21, 1982.