[No. 22534-1-I. Division One. May 30, 1989.]

MARY L. MCKEE, *Appellant*, v. THE CITY OF EDMONDS, *Respondent*.

*Stephen K. Kortemeier* and *Allan D. Loucks,* for appellant.

*Mark R. Bucklin, Michael C. Walters,* and *Keating, Bucklin & McCormack,* for respondent.

WEBSTER, J.—Mary McKee appeals a dismissal of her suit against the City of Edmonds for personal injuries she

sustained when she tripped in a pothole while jaywalking. We affirm.

## FACTS

McKee tripped while crossing Main Street in downtown Edmonds on March 4, 1986. Both ends of the block had crosswalks, and McKee was about to use one before her fall. However, she became distracted and attempted to cross midblock. Just before she reached the center line of the street, she tripped in the pothole and fractured her leg.

The "hole" was approximately 2 inches deep and 8 by 12 inches wide. It resulted from water damage and "reflective cracking". The latter phenomenon typically results when asphalt is laid over concrete slabs. Prior to McKee's fall, the City had attempted to seal the cracks to prevent further erosion of asphalt.

City ordinance prohibited pedestrian crossings outside of marked crosswalks. The midblock area in which McKee fell had been a marked crosswalk prior to 1978. In 1978, the City removed it. Marked crosswalks remained at either end of the block. They were unobstructed and properly maintained at the time of McKee's fall.

McKee and others characterized the area of her fall as a "mall". Twice each year, once during Christmas and again on Independence Day, the block was closed to car traffic and openly available for pedestrian usage. McKee worked at an adjacent travel agency for 16 years prior to her fall. She and other pedestrians, including some city employees, often crossed midblock without receiving jaywalking citations. Edmonds police had never issued jaywalking citations in the immediate area, although the City had issued 40 citations elsewhere during the 3–year period preceding McKee's fall.

## SCOPE OF DUTY

McKee admits she was jaywalking. However, she contends that jaywalking was customary and foreseeable at the area in question, and, thus, the City owed her a duty to make the area safe for pedestrian travel.

■ Our Supreme Court rejected a similar contention in *Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 777, 632 P.2d 504 (1981). The court recited a well established rule:

> [A] "municipality . . . [is] obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using such ways *in a proper manner* and *exercising due care for their own safety.*"

(Italics ours.) *Hansen,* at 776 (quoting *Berglund v. Spokane Cy.,* 4 Wn.2d 309, 313, 103 P.2d 355 (1940)). The italicized language qualifies the duty, and failure to instruct the jury on it is reversible error. *Argus v. Peter Kiewit Sons' Co.,* 49 Wn.2d 853, 859, 307 P.2d 261 (1957); *Smith v. Aberdeen,* 7 Wn. App. 664, 667–68, 502 P.2d 1034 (1972). The court quoted from a Court of Appeals case to illustrate the application of the above rule in the case of a jaywalker:

> Plaintiff was jaywalking. In effect he selected and created his own crosswalk mid–block, and insists the city should have made it safe for him. To permit him to recover on the basis that the city was negligent would require us to hold that the city must maintain the full block of a street safe for pedestrian cross travel when the sidewalk, or even a portion thereof, is blocked. This we will not do. At the maximum, plaintiff would have to walk no more than one–half block to reach a crosswalk.

*Hansen,* at 776 (quoting *Nelson v. Tacoma,* 19 Wn. App. 807, 811, 577 P.2d 986 (1978)). Finally, the court expressly declined to "broaden" the common law rule "by extending it to all foreseeable travelers." *Hansen,* at 777. Although the court concluded without discussion that there was "no reason" to anticipate pedestrian crossings at the area in question, the court implicitly held that, even if jaywalking was foreseeable, there was "no duty . . . to make the middle of the street, mid–block, safe for pedestrians who might elect to leave the sidewalk . . . and angle *illegally* across the street". (Italics ours.) *Hansen,* at 778. In so holding, the

Supreme Court reversed the Court of Appeals, which concluded that the adoption of comparative negligence warranted a different result. "The adoption of comparative negligence does not create a new liability where none previously existed. . . . The doctrine . . . does not enhance duty." *Hansen,* at 778.

Here, the facts are certainly less compelling than they were in *Hansen* and *Nelson.* In those cases, a sidewalk or pedestrian path was blocked, forcing pedestrians to detour and backtrack. Here, there was no obstruction. The alleged defect in *Hansen* was a slippery plank; in *Nelson,* a patch of ice. In contrast, McKee tripped in an ordinary pothole of which she should have been well aware, given her 16–year familiarity with the immediate area. In view of the more compelling facts in *Hansen* and *Nelson,* we reject McKee's invitation to distinguish those cases. A municipality's neglect of duty to enforce its ordinances does not create liability where none would otherwise attach. *See Goggin v. Seattle,* 48 Wn.2d 894, 900, 297 P.2d 602 (1956).

A sound policy judgment underlies our conclusion. Municipalities are

> responsible for maintaining thousands of miles of public highways and roads which have great social utility and are absolutely indispensable to the best interests of the public at large. It is impossible for these roads and highways to be maintained in perfect condition, and the fact that there are potholes and defects in roadways are matters widely known to the public.

*Hines v. Department of Transp. & Dev.,* 503 So. 2d 724, 726 (La. Ct. App. 1987). Further, the Legislature has recently found that

> counties, cities, and other governmental entities are faced with increased exposure to lawsuits and awards and dramatic increases in the cost of insurance coverage. These escalating costs ultimately affect the public through higher taxes, loss of essential services, and loss of the protection provided by adequate insurance.

Laws of 1986, ch. 305, § 100 Preamble; *see* RCW 4.16.160 Preamble. Thus, the Legislature enacted laws "to create a

more equitable distribution of the cost and risk of injury and [to] increase the availability and affordability of insurance." RCW 4.16.160 Preamble. In view of this plain and paramount legislative purpose, we cannot justify recovery for jaywalkers when crosswalks are readily available.

The only duty the City of Edmonds owed to McKee was the duty to refrain from willful and wanton misconduct. *See Fernandez v. Department of Hwys.*, 49 Wn. App. 28, 34, 741 P.2d 1010 (1987). There is no assertion, nor is there evidence to support an assertion, that the City breached this duty. Thus, summary judgment was proper.

Affirmed.

COLEMAN, C.J., and REVELLE, J. Pro Tem., concur.