[No. 19203-9-II.   Division Two.   May 16, 1997.]

WILLIAM WICK, *as Guardian, Appellant*, v. CLARK COUNTY, ET AL., *Respondents.*

CLARK COUNTY, *Respondent*, v. WILLIAM WICK, *as Guardian, Appellant*, RONALD D. ALMER, ET AL., *Respondents.*

*William F. Nelson* and *Horenstein & Duggan, P.S.*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney for Clark County,* and *E. Bronson Potter, Deputy*; and *Donald A. Esau*, for respondents.

ARMSTRONG, J. — Wick appeals a jury verdict finding

the County faultless in a collision between his seven-year-old son and a car that had just crested a steep hill that lacked warning signs. First, Wick contends the trial court erroneously instructed that the County's duty was only to those *exercising ordinary care for their own safety*; he argues that this treats contributory negligence as a total bar to recovery, rather than as a reduction in plaintiff's recovery. Second, he asserts that because the County refused to stipulate before the jury that feasibility was not an issue, the trial court should have admitted evidence that the County put up warning signs after the accident. We affirm, holding that the jury was properly instructed on the County's duty, and that the trial court did not abuse its discretion in refusing the evidence of later repairs.

## FACTS

During the afternoon of March 20, 1987, Ronald D. Almer was driving east on NE 119th Street, a paved, two-lane street in Clark County. The posted speed limit was 35 m.p.h. Near the accident scene the road goes over a steep hill that limits the sight distance of drivers. There were no warning signs on the hill.

As Almer crested the hill, he saw seven-year-old Benjamin Wick on a bicycle in the east-bound lane. Almer slammed on his brakes and swerved to the left, but his left front fender hit Benjamin. Benjamin suffered severe internal injuries.

About three weeks after the accident, the County posted a sign on the hill reading, "Limited Sight Distance 20 m.p.h." Later, because of a change in federal regulations, the County changed the sign to read "Impaired Sight Distance."

Wick alleged the County was negligent for (1) failing to maintain a reasonably safe street, (2) failing to warn of limited sight distance, and (3) allowing a dangerous hill to exist. The County claimed, among other things, that the accident resulted from Benjamin's negligence and the negligence of his parents.

At trial, Wick's expert, a highway traffic engineer, testified that the posted speed limit was too high because of the limited sight distance caused by the steepness of the hill. He concluded that the road was inherently dangerous and deceptive for people exercising ordinary care, and that the County should have regraded the hill and installed warning signs.

Two experts testified for Clark County. One, a traffic safety engineer, testified that warning signs, with or without speed advisories, are not effective in reducing speed. Although not admitting that the hill was unsafe, he did concede that regrading would make it safer.

The County's second expert, a Cowlitz County road engineer, concluded that: (1) the hill was reasonably safe for drivers using it in a proper manner and exercising ordinary care for their own safety; (2) limited sight distance signs are generally ineffective; and (3) Clark County acted reasonably by not posting warning signs on the hill.

By special verdict form, the jury found that Clark County, Almer, and Jeanette Wick, Benjamin's mother, were not negligent.

## ANALYSIS

### I

### Jury Instructions

Wick assigns error to a portion of Instruction 8: "With respect to Clark County, negligence means the failure to exercise ordinary care in the maintenance of its public roads to keep them in a condition that is reasonably safe for ordinary travel by persons using them in a proper manner *and exercising ordinary care for their own safety.*" (emphasis added).[1]

Wick essentially argues that Instruction 8 would bar

---

[1]The instruction shares language with WPI 140.01 and was accompanied by the WPI special verdict form 45.27. WASHINGTON PATTERN JURY INSTRUCTIONS — CIVIL (3d ed. Supp. 1994) (WPI).

Benjamin's recovery if the jury were to find him negligent.[2] Wick's solution, in his Proposed Instruction 28, eliminated the phrase "*and exercising ordinary care for their own safety.*"[3] In support of eliminating the "ordinary care" language, Wick cites *McCluskey v. Handorff-Sherman*, 125 Wn.2d 1, 882 P.2d 157 (1994), and *Ruff v. County of King*, 125 Wn.2d 697, 887 P.2d 886 (1995). *McCluskey* described the government's duty to make the highways safe as follows: "Under the common law, the State of Washington has a duty to exercise ordinary care in the repair and maintenance of its public highways, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner." *McCluskey*, 125 Wn.2d at 6 (citing *Meabon v. State*, 1 Wn. App. 824, 827, 463 P.2d 789 (1970)); *see also Ruff*, 125 Wn.2d at 704 (citing *Stewart v. State*, 92 Wn.2d 285, 299, 597 P.2d 101 (1979); *Provins v. Bevis*, 70 Wn.2d 131, 138, 422 P.2d 505 (1967); *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 854, 751 P.2d 854 (1988)).

■ ■ Wick argues that in *McCluskey* and *Ruff* the Supreme Court recognized an inconsistency between comparative negligence and the latest edition of WASHINGTON PATTERN JURY INSTRUCTIONS, WPI 140.01, which retains the "exercising ordinary care for their own safety" language. WPI (3d ed. Supp. 1994). To reconcile the inconsistency, Wick suggests, the Court modified the duty of a governmental agency to users of its roads, limiting it only to those using the highway *in a proper manner*. This, according to Wick, extends the duty to negligent users but allows the doctrine of comparative negligence to reduce the award.

We disagree for several reasons. First, there is no evidence the Washington Supreme Court intended such a

---

[2]The jury was instructed that negligence is the failure to exercise ordinary care. Instruction 8.

[3]"Clark County has a duty to exercise ordinary care in the repair and maintenance of its public roads, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner."

change. The language cited by Wick in each case is dicta; the language of WPI 140.01 was not at issue in either case. Second, *McCluskey* and *Ruff* rely on cases that used "exercising ordinary care for their safety" or similar language. *Meabon,* 1 Wn. App. at 827 (cited in *McCluskey,* 125 Wn.2d at 6); *Stewart,* 92 Wn.2d at 299 (cited in *Ruff,* 125 Wn.2d at 704); *Provins,* 70 Wn.2d at 138 ("[E]xercise ordinary care to keep its public ways in a safe condition for ordinary travel.") (cited in *Ruff,* 125 Wn.2d at 704); *Wojcik,* 50 Wn. App. at 854 ("A county has a duty to maintain its highways in a reasonably safe condition for its users.") (cited in *Ruff,* 125 Wn.2d at 704).

More importantly, the Supreme Court has rejected Wick's argument. In *Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 632 P.2d 504 (1981), the court stated:

> The Court of Appeals further held that the rule expressed in *Berglund*[4] and *Nelson*[5] [duty limited to those exercising due care for their safety] is no longer applicable since the adoption of comparative negligence in this state. This holding is erroneous. The adoption of comparative negligence does not create a new liability where none previously existed. Rather, recovery is now permitted where it was previously denied after liability has been established. The doctrine of comparative negligence does not enhance duty. It merely removes the bar to recovery when the plaintiff has been negligent.

*Hansen v. Washington Natural Gas Co.,* 95 Wn.2d at 778 (citations omitted); *see also McKee v. City of Edmonds,* 54 Wn. App. 265, 267-69, 773 P.2d 434 (1989); WPI 140.01 cmt. at 136 (3d ed. Supp. 1994) ("Duty, as defined in this instruction, is not determined by the negligence, if any, of a plaintiff.").

Finally, in a recent case concerning State liability for failing to post adequate speed warnings, Division Three of this court used the "ordinary care" standard. *Gunshows v.*

---

[4]*Berglund v. Spokane County,* 4 Wn.2d 309, 103 P.2d 355 (1940).

[5]*Nelson v. City of Tacoma,* 19 Wn. App. 807, 577 P.2d 986 (1978).

*Vancouver Tours & Transit, Ltd.,* 77 Wn. App. 430, 435, 891 P.2d 46 (1995). We find no error in the instructions on the County's duty.

## II
### Motion in Limine

■ We review the court's ruling on a motion in limine for an abuse of discretion. *See Goodwin v. Bacon,* 127 Wn.2d 50, 54, 896 P.2d 673 (1995); *see also Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 484-85, 573 P.2d 785, 93 A.L.R.3d 86 (1978) (no abuse of discretion to refuse evidence of subsequent product changes to prove feasibility). A trial court abuses its discretion if its ruling is "manifestly unreasonable or based upon untenable grounds or reasons." *Goodwin,* 127 Wn.2d at 54 (quoting *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 77, 684 P.2d 692 (1984)).

Pursuant to ER 407, the County moved to exclude evidence that it had posted "Limited" or "Impaired Sight Distance" signs and a 20 m.p.h. speed limit sign after the accident. Wick opposed the motion, arguing that feasibility was at issue. When the County replied that it did not dispute feasibility, Wick demanded a stipulation before the jury. But the County refused. The trial court then granted the motion, ruling that because the County had not controverted feasibility, the evidence was not admissible. The court also concluded that the County had no affirmative duty to enter into a stipulation before the jury. Wick assigns error to the trial court's rulings on the motion in limine and the court's refusal to instruct that the County stipulated to feasibility.[6]

### A. Feasibility

Wick first argues that the subsequent placement of signs

---

[6]Wick offered Proposed Instruction 32: "Defendant Clark County admits that it would have been feasible to place warning devices to warn eastbound drivers on NE 119th of the inherent condition of the roadway due to the vertical curve."

was admissible to prove the feasibility of making the street safer. He cites *Meabon v. State* which held that "[e]vidence of subsequent repair is admissible if feasibility is a factor of the plaintiff's theory, regardless of whether the defendant raises feasibility as a defense." *Meabon*, 1 Wn. App. at 831.

The plaintiff in *Meabon* was a passenger in a car that skidded and overturned on a rain-and-oil-slickened state highway. The highway was oily because of a mixture used in the asphalt. Authorities were aware of the slippery area but had not burned off the oil as recommended by a departmental manual. The State burned the oil about one month after the accident. On appeal, the State assigned error to the court's admission of evidence of subsequent repairs, arguing it had not raised "the question of feasibility or practicality of repair." *Meabon*, 1 Wn. App. at 831. Division Three of this court affirmed. Citing *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969), the court stated the evidence was admissible to show feasibility because it was "a factor in the plaintiff's theory." *Meabon*, 1 Wn. App. at 831 (citing *Brown*).

Next, Wick cites *Reil v. State*, 4 Wn. App. 976, 484 P.2d 1150 (1971), another case in which Division Three of this court cited *Brown* for the proposition that evidence of post-accident safeguards may be admitted if feasibility is a factor in the plaintiff's case. *Reil v. State*, 4 Wn. App. at 977 (citing *Brown*, 75 Wn.2d 833). *Reil* held that evidence of subsequent repairs of chuckholes was improper because it was an attempt to show the State's primary negligence, rather than feasibility. But the court repeated the language from *Meabon* that evidence of later repairs is admissible where feasibility is a factor in the plaintiff's case. *Reil*, 4 Wn. App. at 977.

■■ Evidence of subsequent remedial measures may be admitted if feasibility is *controverted*. ER 407. *Brown* comports with the rule. In *Brown*, one defendant admitted that the post-accident installation of a guard on an auger

was feasible before the injury occurred. But "[i]ts codefendant vigorously contended that the guard was not practical." *Brown*, 75 Wn.2d at 839. The supreme court affirmed the admission of the subsequent repairs because feasibility was controverted; therefore, it was at issue. *Brown*, 75 Wn.2d at 839. Insofar as *Meabon* and *Reil* do not agree with ER 407, they are inconsistent with *Brown* and with *Bartlett v. Hantover*, 84 Wn.2d 426, 526 P.2d 1217 (1974). In *Bartlett*, the Supreme Court held that where the defendant conceded feasibility, the plaintiff alone could not make it an issue. *Bartlett*, 84 Wn.2d at 429 ("It takes, however, two parties to make a factual allegation a contested matter in a case."). Here, because feasibility was not contested, evidence of later repairs was inadmissible. *Bartlett*, 84 Wn.2d at 429-31.

Wick argues that the County raised feasibility by presenting testimony that warning signs would not slow traffic. We disagree. The County's witnesses did not testify as to the *feasibility* of putting up warning signs. Rather, the witnesses testified that warning signs would not be *effective*. Furthermore, the County never mentioned feasibility in its closing argument.

We conclude that because feasibility was not at issue, the evidence of repairs was not admissible. And neither the language of ER 407 nor any Washington case creates a duty to stipulate before the jury in order to remove feasibility as an issue. *Accord Gauthier v. AMF, Inc.*, 788 F.2d 634, 637-38, *modified*, 805 F.2d 337 (9th Cir. 1986); *Davila v. Bodelson*, 103 N.M. 243, 704 P.2d 1119, 1129 (Ct. App. 1985). We hold that the trial court did not abuse its discretion in rejecting the evidence of repairs and not requiring a stipulation before the jury.

The County filed a cross-claim against Almer for contribution and brought that claim up on a cross-appeal. But the County has made no assignments of error and has not argued its cross-appeal against Almer. Accordingly, we dismiss the appeal and award Almer the statutory attorneys fees he has requested. *O'Brien v. Schultz*, 45 Wn.2d

769, 771-72, 278 P.2d 322 (1954), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984).

We affirm.

HUNT, J., concurs.

MORGAN, J. (concurring) — The plaintiff requested the trial court to instruct the jury that the County's duty was "to exercise ordinary care in the repair and maintenance of its public roads, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them *in a proper manner*." Apparently based on WPI 140.01, the trial court told the jury that the County's duty was "to exercise ordinary care in the maintenance of its public roads to keep them in a condition that is reasonably safe for ordinary travel by persons using them *in a proper manner and exercising ordinary care for their own safety*." (Emphasis added.) In this context, in my view, the phrase "in a proper manner" has the same meaning as the phrase "and exercising ordinary care for their own safety" (in other words, the two italicized phrases are redundant). Thus, even if the trial court erred by not deleting the second italicized phrase, the result of the trial would have been the same, the error could not have been prejudicial, and reversal is not warranted.

Although I do not perceive error warranting reversal, I write to suggest that WPI 140.01 may be unduly confusing because, at least arguably, it fails to make clear whether the phrases "in a proper manner and exercising ordinary care for their own safety" modify the standard of care, the protected class, or both. In a negligence case, duty includes at least three questions: (1) By whom is it owed? (2) To whom is it owed? (3) What is its nature?[7] To answer the

[7]*Gall v. McDonald Indus.*, 84 Wn. App. 194, 202, 926 P.2d 934 (1996), *review denied*, 131 Wn.2d 1013 (1997); *Nivens v. 7-11 Hoagy's Corner*, 83 Wn. App. 33, 41, 920 P.2d 241 (1996), *review granted*, 131 Wn.2d 1005 (1997); *Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 866, 912 P.2d 1044, *review granted*, 129 Wn.2d 1025 (1996).

first question is to define an obligated class; to answer the second is to define a protected class; and to answer the third is to define a standard of care.[8] In a road case like this, the standard of care (i.e., the county's "duty") is to maintain the roads in a reasonably safe condition for travel by persons using them *in a proper manner and exercising ordinary care for their own safety.*[9] The protected class, however, includes anyone foreseeably harmed, regardless of whether that person was using the roads *in a proper manner and exercising reasonable care for his or her own safety.*[10] I conclude that WPI 140.01 is correct if read so that the italicized phrases modify the standard of care, but incorrect if read so that the italicized phrases narrow the protected class.

I agree with the majority on the issue involving ER 407.

Review denied at 133 Wn.2d 1019 (1997).

---

[8]*Gall*, 84 Wn. App. at 202; *Nivens*, 83 Wn. App. at 41; *Schooley*, 80 Wn. App. at 866.

[9]*Ruff v. County of King*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995); *McCluskey v. Handorff-Sherman*, 125 Wn.2d 1, 6, 882 P.2d 157 (1994).

[10]RCW 4.22.070; *Hansen v. Friend*, 118 Wn.2d 476, 484, 824 P.2d 483 (1992); *Taggart v. State*, 118 Wn.2d 195, 219, 224, 822 P.2d 243 (1992); *Gall*, 84 Wn. App. at 208; *Nivens*, 83 Wn. App. at 46. Under Washington's comparative negligence scheme, contributory negligence reduces damages, but it does not narrow the class of persons to whom the defendant owes a duty.