17 P.3d 661 (2001)
104 Wash.App. 545
Jean KELLER as General Guardian of Casey Keller, an incompetent, Appellant,
v.
CITY OF SPOKANE, a municipal corporation; Walter Balinski and Hazel Balinski, husband and wife, Respondents.
No. 17744-1-III.
Court of Appeals of Washington, Division 3, Panel Four.
February 1, 2001.
*662 Roger A. Felice, Roger A. Felice P.S., Edward A. Dawson, Dawson & Meade, Spokane, for Appellant.
Milton G. Rowland, James A. Richman, Asst. City Attys., Spokane, I. Richard Lassman, Seattle, for Respondents.
SWEENEY, A.C.J.
This is an intersection accident case. Casey Keller's motorcycle collided with Walter Balinski's car when Mr. Balinski failed to *663 cede the right of way at an intersection controlled by two-way stop signs. The trial judge instructed the jury that the City of Spokane had a duty to maintain its streets in a condition reasonably safe for persons using them in a proper manner and exercising ordinary care for their own safety. The instruction accurately recites 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01, at 136 (3d ed. Supp.1994) (WPI). The question presented is whether the trial court erred by limiting the City's obligation to maintain safe streets to "people exercising ordinary care for their own safety." We conclude that it did and reverse and remand for a new trial on liability only.

FACTS
Casey Keller drove his motorcycle westbound on Wellesley Avenue in Spokane. Walter Balinski drove his automobile south on Freya toward the intersection of Wellesley and Freya. Mr. Balinski stopped at the stop sign at Wellesley and Freya. As the favored driver, Mr. Keller approached the intersection at speeds variously estimated at 30 mph to close to 80 mph. The speed limit on Wellesley is 30 mph. Mr. Balinski looked briefly to his left but then focused his attention to his right and straight ahead before driving into the intersection. Mr. Balinski's view to his left, the direction from which Mr. Keller was approaching, was unobscured for 700 feet. The motorcycle crashed into Mr. Balinski's car from the left. Mr. Keller was not wearing a helmet and suffered severe injuries.
Procedure. Mr. Keller sued both Mr. Balinski and the City of Spokane and alleged negligence. The City generally denied the allegations and affirmatively alleged sovereign immunity. The City moved for summary dismissal on the grounds that its only duty was to the public, not to Mr. Keller. It also argued that the decision not to install a four-way stop was an exercise of its legislative discretion and therefore not subject to judicial review. The trial court agreed and dismissed the case. We reversed and held that neither governmental immunity nor the public duty doctrine relieved the City of liability. Both defendants also alleged that Mr. Keller's injuries were caused by his failure to wear a helmet. The trial court dismissed this defense on Mr. Keller's motion. And we affirmed that part of the judgment. Keller v. City of Spokane, Nos. 14170-5-III, 14353-8-III, 1996 WL 460256 (Wash.Ct.App. Aug.15, 1996), review denied, 131 Wash.2d 1017, 936 P.2d 417 (1997).
Trial. Mr. Keller showed that the intersection was dangerous and caused lots of accidents. City traffic engineers testified the intersection was dangerous, and that a four-way stop was necessary. Citizens complained and petitioned the City for a stoplight or sign. The intersection handled a high traffic volume. And Mr. Keller showed that both the national guidelines found in the Manual on Uniform Traffic Control Devices (MUTCD) and the City's own internal standards suggested the need for a four-way stop. Mr. Keller showed that an average speed of 40 to 50 mph was usual and argued that this in itself suggested the need for a stop.
The City conceded the intersection had problems and that traffic engineers had watched it for some time. But it argued that MUTCD guidelines are permissive, not mandatory; the intersection was safe for ordinary travel; it had adequate to excellent visibility; and traffic was light at the time of the accident. The City also showed that Mr. Keller was not wearing eye protection, his headlight was not on, and his speed was excessive. And it invited the jury to find that the collision was avoidable but for Mr. Keller's speed.
Jury Instructions. The court instructed the jury that:
A city has a duty to exercise ordinary care in the signing and maintaining of its public streets to keep them in a condition that is reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety.[1]
It is the duty of the city to eliminate an inherently dangerous condition, if one exists, and its existence is known, or should *664 have been known to the city in the exercise of reasonable care.
Inherently dangerous, as used herein, means a danger existing at all times so as to require special precautions to prevent injury.
Instruction No. 13, Clerk's Papers at 609.
Mr. Keller asked the court to instruct that the City's duty and breach are determined independently of the plaintiff's negligence. The court refused.
The jury returned a special verdict that the City was not negligent. It found Mr. Keller 60 percent at fault and Mr. Balinski 40 percent at fault.

DISCUSSION
Mr. Keller takes issue with the language of the first paragraph of Instruction No.13 limiting the City's duty to persons using [the streets] in a proper manner and exercising ordinary care for their own safety. He contends this language limits the City's duty to those who are without fault. And in so doing, the instruction resurrects the discarded doctrine of contributory negligence as an absolute bar to recovery. He says the effect of this instruction is to require plaintiffs alleging municipal negligence to prove their own lack of fault as a prerequisite to establishing that the city owed them a duty of ordinary care.
The City concedes that orthodox principles of duty and breach and comparative negligence apply to municipalities. It nevertheless contends that Mr. Keller's negligence claim fails as a matter of law: it owed Mr. Keller no duty because he was speeding. The City further argues that this limitation on the scope of municipal duty reflects a policy decision articulated by the Supreme Court in Hansen v. Washington Natural Gas Co.[2]
We reject the City's application of Hansen to these facts and decide (1) that the jury instructions as a whole failed to instruct the jury as to the City's duty of ordinary care to provide safe streets, and (2) that Instruction No. 13 erroneously excludes contributorily negligent drivers from the class of persons to whom cities owe the duty of ordinary care.
Standard of Review. We review jury instructions de novo. Hall v. Sacred Heart Med. Ctr., 100 Wash.App. 53, 61, 995 P.2d 621, review denied, 141 Wash.2d 1022, 10 P.3d 1073 (2000). An erroneous statement of the applicable law is reversible error if it prejudices a party. Robertson v. State Liquor Control Bd., 102 Wash.App. 848, 860, 10 P.3d 1079 (2000) (citing Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995)).

EXISTENCE OF A DUTY
We first address the City's contention that no duty is owed unless the plaintiff is fault free.
Ordinary Negligence. It is well established that municipalities are subject to the same fundamental negligence principles as any other citizen. RCW 4.96.010(1); Ruff v. County of King, 72 Wash.App. 289, 294, 865 P.2d 5 (1993), rev'd on other grounds, 125 Wash.2d 697, 887 P.2d 886 (1995). The elements of negligence are (1) the existence of a duty owed by the defendant to the plaintiff, (2) breach of that duty, and (3) injury to plaintiff, (4) proximately caused by the breach. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999). The law permits a cause of action in tort against a municipality if a duty can be established, just the same as with a private person. RCW 4.96.010; Meaney v. Dodd, 111 Wash.2d 174, 179, 759 P.2d 455 (1988). The plaintiff must establish a breach of duty and resultant damages whether the defendant is a person or a municipality. A municipality's tortious conduct is treated the same as that of a private citizen. Meaney, 111 Wash.2d at 179, 759 P.2d 455.
We have a propensity to confuse our function with that of the jury when setting the limits of a defendant's liability for negligence. Hartley v. State, 103 Wash.2d 768, 781, 698 P.2d 77 (1985). A contributing factor is the fact that duty and proximate cause are often intertwined and linked to policy *665 considerations, an approach that is often helpful. Id. at 779, 698 P.2d 77. However, in cases such as the one before us, meaningful analysis requires a clear distinction between two senses in which the word "duty" is used.
Primary Duty. The threshold determination is primary "duty": Does the defendant owe any duty of care to the plaintiff? This determination includes the existence and the nature of the duty. This is always a question of law. Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 475, 951 P.2d 749 (1998); McKenna v. Edwards, 65 Wash. App. 905, 912, 830 P.2d 385 (1992). And it is, therefore, determined by the court, not a jury. Hertog, 138 Wash.2d at 275, 979 P.2d 400.
Primary Duty is Owed to the Traveling Public. The legal determination of primary care includes the question of whether the plaintiff is a member of the class of persons to whom that duty is owed. This is also a question of law. Pinch's Deli, 134 Wash.2d at 475 n. 3, 951 P.2d 749 (statutory duty). A city's duty of ordinary care to maintain reasonably safe streets extends as a matter of law to the traveling public. Bradshaw v. City of Seattle, 43 Wash.2d 766, 773, 264 P.2d 265, 42 A.L.R.2d 800 (1953); Wojcik v. Chrysler Corp., 50 Wash.App. 849, 857-58, 751 P.2d 854 (1988); Raybell v. State, 6 Wash.App. 795, 496 P.2d 559 (1972).
Proximate Cause. Once primary duty is established as a matter of law, the remaining elementsbreach, proximate cause, and damagesare the factual questions for the jury. Torres v. City of Anacortes, 97 Wash.App. 64, 73, 981 P.2d 891 (1999), review denied, 140 Wash.2d 1007, 999 P.2d 1261 (2000); Griffin v. West RS, Inc., 97 Wash.App. 557, 572, 984 P.2d 1070 (1999), review granted, 140 Wash.2d 1017, 5 P.3d 9 (2000). It is in the factual context of proximate cause that we ask whether, in the particular circumstances, the defendant's liabilityor dutyextended to protect a particular plaintiff from the actual events. Hartley, 103 Wash.2d at 779, 698 P.2d 77. This aspect of duty is always determined by the finder of fact.
The City correctly asserts that municipalities are not insurers of public safety and that cities have no "duty" protect negligent road users from the consequences of driver misconduct. Hansen v. Wash. Natural Gas Co., 95 Wash.2d 773, 778, 632 P.2d 504 (1981); Gunshows v. Vancouver Tours & Transit, Ltd., 77 Wash.App. 430, 433, 891 P.2d 46 (1995) (no duty to protect plaintiff against his own negligence if the intersection was safe for ordinary travel); McKee v. City of Edmonds, 54 Wash.App. 265, 267, 773 P.2d 434 (1989) (no duty to protect jaywalkers from falling in holes when safe crosswalks are provided); Braegelmann v. County of Snohomish, 53 Wash.App. 381, 766 P.2d 1137 (1989) (no duty to protect against exceedingly reckless driving); Prybysz v. City of Spokane, 24 Wash.App. 452, 458-59, 601 P.2d 1297 (1979) (bridge guardrails sufficient if they provide ordinary safety).
It is in this contextand this context onlythat the jury evaluates the consequences of the plaintiff's negligence. Schneider v. Yakima County, 65 Wash.2d 352, 397 P.2d 411 (1964). See also Lucas v. Phillips, 34 Wash.2d 591, 597, 209 P.2d 279 (1949); Berglund v. Spokane County, 4 Wash.2d 309, 321, 103 P.2d 355 (1940); Stephens v. City of Seattle, 62 Wash.App. 140, 813 P.2d 608 (1991); Tanguma v. Yakima County, 18 Wash.App. 555, 561, 569 P.2d 1225 (1977); Breivo v. City of Aberdeen, 15 Wash.App. 520, 523, 550 P.2d 1164 (1976). Thus, although a municipality may have a duty to maintain a roadway in a reasonably safe condition, this does not create a duty "`to anticipate and protect against all imaginable acts of negligent drivers' for to do so would make a county an insurer against all such acts." Gunshows, 77 Wash.App. at 434-35, 891 P.2d 46 (quoting Ruff, 125 Wash.2d at 705, 887 P.2d 886).
The application of this well-settled law to the facts here is as follows: The City owed to Mr. Keller, as a member of the traveling public, a duty to provide streets that are reasonably safe. Mr. Keller had the right to have his jury so instructedas a matter of law. The jury should then have been charged to decide as a question of fact *666 whether or not the City breached its duty of ordinary care, i.e., whether or not the intersection at issue was reasonably safe. If it was reasonably safe, the negligence inquiry with respect to the City ended. If it was not reasonably safe, the jury would determine whether the unsafe condition constituted a breach of the duty of ordinary care. If it found a breach, and not before then, the jury would consider the total circumstances, foreseeability, and so forth, including the negligence, if any, of the drivers. Based on these findings of fact, the jury would decide whether the City had a duty to protect Mr. Keller from the particular events that occurred here.
Hansen and its progeny hold that a municipality, having once fulfilled its primary duty of ordinary care by providing sidewalks and crosswalks safe for ordinary prudent use, owes no additional duty to jaywalkers who choose to ignore them. Hansen, 95 Wash.2d at 778, 632 P.2d 504. It is only in this factual, proximate cause inquiry that the plaintiff's negligence is relevant. The plaintiff's negligence is not relevant in determining the defendant's primary duty of care. Gunshows, 77 Wash.App. at 435, 891 P.2d 46 (question of plaintiff's negligence never arises if plaintiff fails to first establish that State breached a duty owed).
In sum, the City is correct that it has no duty to foresee "all imaginable acts of negligent drivers." Ruff, 125 Wash.2d at 705, 887 P.2d 886; Stewart v. State, 92 Wash.2d 285, 299, 597 P.2d 101 (1979); Owens v. City of Seattle, 49 Wash.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956). This is the holding of Hansen. The City is also correct that the doctrine of comparative negligence does not enhance the City's duty. It merely removes a barrier to recovery when the plaintiff has been negligent. Hansen, 95 Wash.2d at 778, 632 P.2d 504.
WPI 140.01. But the City stretches the reasoning of Hansen to support its contention that the purpose of WPI 140.01 is to limit the City's duty of ordinary care to persons "exercising due care." This is wrong.
The City cites numerous decisions from Washington and other jurisdictions that facially exonerate municipalities from any duty to negligent plaintiffs in street maintenance actions. But these holdings are generally explicitly or implicitly predicated on one of two premises. In most cases the street was in fact safe for ordinary travel by reasonably prudent persons. See, e.g., Hansen, 95 Wash.2d at 778, 632 P.2d 504 (jaywalker slips on wooden plank; safe sidewalk provided, no inherent danger); Gunshows, 77 Wash.App. at 434-35, 891 P.2d 46 (child cyclist ran stop sign; intersection safe for ordinary travel); McKee, 54 Wash.App. at 267, 773 P.2d 434 (jaywalker falls in pothole; city provided adequate crosswalks); Bullard v. State, 744 So.2d 212, 220-21 (La.App.1 Cir.1999) (state has no duty to lawbreakers; not disputed street was safe for prudent drivers), writ denied, 754 So.2d 939 (La.2000). Where an unsafe condition was found, the municipality's negligence was not a proximate cause of the injury. See, e.g., Braegelmann, 53 Wash. App. at 385, 766 P.2d 1137 (reckless driving); Klein v. City of Seattle, 41 Wash.App. 636, 705 P.2d 806 (1985) (city's negligence not proximate cause); Smith v. Sharp, 82 Idaho 420, 354 P.2d 172, 176 (1960) (city's negligence assumed but not proximate cause; driver at fault).
Conversely, in those cases in which the municipality failed to take ordinary measures to provide reasonable safety, the plaintiff prevailed, regardless of his or her own fault. See, e.g., Johnson v. Haupt, 5 Kan.App.2d 682, 623 P.2d 537, 539 (1981) (city partially liable even though plaintiff 30 percent at fault); City of Jackson v. Locklar, 431 So.2d 475 (Miss.1983) (condition of driver irrelevant if there is known hazardous street condition); Daniel v. State, 239 N.J.Super. 563, 571 A.2d 1329 (1990) (negligence of driver irrelevant; proper inquiry is whether road was safe for fictitious prudent user); Burkholz v. Commonwealth, 667 A.2d 513 (Pa.Commw.Ct. 1995) (city 15 percent liable; plaintiff 85 percent at fault).
Here, the first paragraph of Instruction No. 13 (WPI 140.01) erroneously left it to the jury to decide the legal question of the City's primary duty owed to the plaintiff.
*667 Wick v. Clark County Adopts the City's View. Our conclusion is contrary to that of the Division Two case of Wick v. Clark County.[3]Wick holds that Hansen and Gunshows require the conclusion that only a fault-free plaintiff can prevail in a negligent street maintenance action, because the city owes a duty of ordinary care only to persons who are themselves exercising due care. Wick v. Clark County, 86 Wash.App. 376, 381, 936 P.2d 1201 (1997).
In our view, Wick confuses the primary legal question of whether a duty of care is owed to the plaintiff with the secondary factual question of whether an obligation existed to prevent the particular harm at issue. Judge Morgan notes that WPI 140.01 is ambiguous on this point and should be supplemented with an unambiguous instruction that the city's negligence must be determined independently. Wick, 86 Wash.App. at 385-86, 936 P.2d 1201 (Morgan, J., concurring).
But the problem with the WPI remains even if it is so supplemented, because the jury could still wrongly believe that the City's duty of ordinary care is conditional on the plaintiff's exercise of due care. Instruction No. 13 as given here leaves room for a reasonable juror to conclude that, if Mr. Keller was speeding, the City owed him no duty. But that if the City had owed him a duty, that duty would have been to eliminate an inherently dangerous situation.
Nothing in our holding is inconsistent with established jurisprudence. Our holding does not enhance the City's duty with respect to intersection safety. The standard was "fit for ordinary travel" before. And it is (or should be) "fit for ordinary travel" now.

INSTRUCTIONS AS A WHOLE ARE MISLEADING
Jury instructions are sufficient if they permit each party to argue his or her theory of the case and properly inform the jury of the applicable law. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). We consider the instructions as a whole. Ulve v. City of Raymond, 51 Wash.2d 241, 247, 317 P.2d 908 (1957).
The trial court made a valiant effort to give instructions that permitted each party to present its theory of the case. Unfortunately, any set of instructions that allowed either party to advance its theory here would necessarily misinform the jury.
The City argued throughout the proceedings that the existence of a duty was for the jury to determine based on its factual determination of the negligence of the plaintiff. As we have noted, it is not. Mr. Keller argued (wrongly) that the City's duty extends to preventing all foreseeable injury.
No instruction gave a sufficiently clear and unambiguous statement of the City's duty of ordinary care to overcome the flaw implicit in Instruction No. 13.
Mr. Keller requested a clarifyingcomparative faultinstruction that the City's negligence is to be determined without reference to his negligence. The court refused, because it concluded that was not the law. It is the law. This same clarifying instruction is suggested in the comment to the WPI to be given "when appropriate." It is appropriate when the plaintiff's negligence is at issue. WPI 140.01 cmt., at 136.
The court did include the second and third paragraphs to comply with the clarifying instruction suggestion of the WPI comment.[4] However, as explained above, the "inherently dangerous" language does not resolve the problem created by the first part of the instruction. The instruction as a whole still leaves room for a reasonable juror to conclude that, if Mr. Keller was speeding, the City owed him no duty.
The instructions taken as a whole permitted the City to argue its theory that Mr. Keller's contributory negligence acted as a complete bar to his recovery. And they did not allow Mr. Keller to argue that the City was negligent for maintaining an inherently dangerous intersectionregardless of Mr. Keller's degree of fault. No matter how *668 much evidence Mr. Keller marshalled showing the defective conditions, the jury could decide the issue without ever considering that evidence, once it concluded he was not exercising care for his own safety.
Simply put, if negligence is defined with reference to a fault-free plaintiff, then the City is not negligent by definition.
The problem here is that the instructions prevented Mr. Keller from arguing that the City owed him a duty to eliminate an inherently dangerous condition and that it breached that duty. Mr. Keller might have succeeded with the plausible case that the City should be held liable for at least part of his damages because it breached its duty of ordinary care.
We cannot guess how the jury reached its verdict. Blue Chelan, Inc. v. Dep't of Labor & Indus., 33 Wash.App. 220, 223, 653 P.2d 1343 (1982), aff'd, 101 Wash.2d 512, 681 P.2d 233 (1984). It may have absolved the City in a single stepno duty; or in two steps duty but no breach; or in three stepsduty and breach but recovery precluded by the degree of Mr. Keller's negligence.
If the jury first considered Mr. Keller's conduct, and then found that the City owed him no duty as a question of fact, it would have exonerated the City of negligence without ever considering Mr. Keller's evidence on intersection design and stop signs, and this intersection in particular.
It is not then possible for us to quantify this error. The jury might have found the City a little or a lot negligent, if it understood that it owed Mr. Keller a duty. Only a retrial can answer this question.

RETRIAL LIMITED TO LIABILITY
Mr. Keller argues that it is not possible to rule out the possibility that the jury's damages verdict was the result of a compromise because it is not possible to know the basis for the jury's verdict, and that we should therefore reverse on both liability and damages.
When no error is assigned to the amount of damages, we remand for retrial on the issue of liability only. France v. Peck, 71 Wash.2d 592, 599, 430 P.2d 513 (1967); Anthony v. C.D. Amende Co., 31 Wash.App. 21, 27, 639 P.2d 231 (1982).
The jury determined Mr. Keller's damages were $1,125,000 non-economic, $851,941 past medical expenses, and $1,165,000 future economic. Mr. Keller does not assign error to the damages award. Nor does he suggest the award is not supported by the evidence, or offer any reason to suspect a compromise verdict. If the jury on remand were to reach a different verdict with respect to whether the City was negligent, it would be the percentages of damages assigned to each party that would changenot the total amount.
The judgment of the trial court is reversed. And the case is remanded for retrial on the issue of liability only.[5]
SCHULTHEIS, J., and KATO, J., concur.
NOTES
[1] The first paragraph of Instruction No. 13 is directly from WPI 140.01.
[2] 95 Wash.2d 773, 632 P.2d 504 (1981).
[3] 86 Wash.App. 376, 936 P.2d 1201 (1997).
[4] "Duty, as defined in this instruction, is not determined by the negligence, if any, of a plaintiff. To avoid jury confusion of the duty of a defendant with the issue of the negligence of a plaintiff, a separate clarifying instruction may be appropriate." WPI 140.01 cmt., at 136.
[5] The City abandoned its cross-appeal in its brief.